FOUR CORNERS BUILDING AND LOAN ASSOCIATION OF NEWARK

*v.*

FRANK SCHWARZWAELDER.

[Decided July 10th, 1917.]

1. Apart from any willful act, the negligence for which a person can be held responsible consists either in the performance of an act which under all the circumstances he is bound not to perform or the non-performance of an act which under all the circumstances he is bound to perform.

2. A director of a building and loan association is guilty of gross negligence in permitting the secretary to call up members of the board of directors and getting their permission to record them as present when they were in fact absent.

3. The duties and responsibilities of directors of building and loan associations considered and defined.

4. If a director was present at a meeting when the minutes of the preceding meeting were approved, he is bound by the knowledge of whatever appeared in the minutes.

5. Where a director permitted an association to make a loan on mortgage on property on which he, as executor, held a prior mortgage, he is guilty of such negligence as renders him responsible to the association for loss by reason thereof.

6. Where a director was present at a meeting when a report was made showing a disbursement on account of a particular mortgage which, had he made inquiries, would have disclosed that the disbursement was on property on which he, as executor, held a mortgage, he is guilty of such negligence as would make him responsible for subsequent loss.

7. Directors of a building and loan association have no right to shift their responsibility on their counsel.

8. That other directors are also responsible is no objection to relief against a defendant director.

*Messrs. Raymond, Mountain, Van Blarcom & Marsh,* for the complainant.

*Mr. Francis Child* and *Mr. Thomas S. Henry,* for the defendant.

LANE, V. C.

This is a proceeding to compel defendant to reimburse complainant for losses alleged to have been sustained by complainant on account of two loans, one of $5,000 on property in South Orange, and one of $4,000 on property in East Orange.

The complainant is a building and loan association, and the defendant was one of its directors at the time the respective loans were made. The defendant was also at the same time one of the executors of the estate of Loehnberg, which estate, it subsequently transpired, held mortgages, prior to those of the building and loan association, upon the properties in question, with the result that, upon a foreclosure of a mortgage prior to that held by the Loehnberg estate on the South Orange property, the equity of the building and loan association was wiped out, and upon the foreclosure of the mortgage held by the Loehnberg estate on the East Orange property the building and loan association, in order to protect its rights, was obliged to buy in the property, which it still holds. The charge is that the defendant, as a director of the building and loan association, has been guilty of such negligence as makes him responsible for the losses accruing to the building and loan association. In *French* v. *Armstrong, 79 N. J. Eq. 283,* Vice-Chancellor Stevens, in dealing with the responsibilities of directors of building and loan associations, said: "In *Williams* v. *McKay, 40 N. J.*

*Eq. 189,* the case of a receiver of a savings bank against its managers, it was held by the court of errors and appeals that the receiver represents not only the corporation but its depositors and creditors, and that the managers stand to such depositors and creditors in the character of trustees; that the trust was direct, and that as such it was exempt from the operation of the statute of limitations. It appears to me that building and loan associations stand on very much the same footing as savings banks. They are *quasi*-public institutions, dealt with as such by the legislature and having very similar objects. They are both designed to conserve the scanty savings of wage earners and other people of small means. If the managers of savings banks are trustees of creditors and depositors, I see no reason why the directors of building and loan associations do not stand in precisely the same relation to their creditors and so-called stockholders." And the court of errors and appeals in *Gerhard* v. *Welsh, 80 N. J. Eq. 203,* dealing with the responsibilities of directors of a building and loan association was apparently of, although not directly so stating, the same opinion. Citing the opinion of the chancellor on final hearing in *Williams* v. *McCay, 46 N. J. Eq. 25.*

In *Williams* v. *McCay, 40 N. J. Eq. 189* (at *p. 195*), the court of errors and appeals said: "The duty belonging to such a situation is a plain one—to care for the moneys intrusted to them in the manner provided in the charter, and to exercise ordinary care and prudence in so doing. It is true that the defendants were unpaid servants, but the duty of bringing to their office ordinary skill and vigilance was none the less on that account, for to this extent there is no distinction known to the law between a volunteer and a salaried agent. These defendants held themselves out to the public as the managers of this bank, and by so doing they severally engaged to carry it on in the same way that men of common prudence and skill conduct a similar business for themselves. This is the measure of the responsibility of officers of this kind." And on final hearing the chancellor—*46 N. J. Eq.* (at *p. 56*)—said: "Trustees of the character of the defendants are not merely required to be honest, but they must also bring to the discharge of the duties that

they undertake ordinary competency, together with reasonable vigilance and care. They cannot excuse imprudence or indifference by showing honesty of intention coupled with gross ignorance and inexperience, or coupled with an absorption of their time and attention in their private affairs. The rule in this respect is admirably stated by Judge Earl, of the court of appeals of New York, in *Hun* v. *Cary, 82 N. Y. 74,* in this language: 'One who voluntarily takes the position of director and invites confidence in that relation, undertakes, like a mandatory, with those whom he represents or for whom he acts, that he possesses at least ordinary knowledge and skill, and that he will bring them to bear in the discharge of his duties. Such is the rule applicable to public officers, to professional men, and to mechanics, and such is the rule which must be applicable to every person who undertakes to act for another in a situation or employment requiring skill and knowledge gratuitously. These defendants ordinarily took the position of trustees of the bank. They invited depositors to confide to them their savings and to entrust the safe-keeping and management of them to their skill and prudence. They undertook not only that they would discharge their duties with proper care, but that they would exercise the ordinary skill and judgment requisite for the discharge of their delicate trust.' " And see *Campbell, Receiver,* v. *Watson, 62 N. J. Eq. 396,* and *Barrett* v. *Bloomfield Savings Institution, 64 N. J. Eq. 425.*

In *Briggs* v. *Spaulding, 141 U. S. 132,* the supreme court of the United States in dealing with the liability of directors said with respect to what is negligence: "If very little care is due from him, and he fails to bestow that little, it is called gross negligence. If very great care is due, and he fails to come up to the mark required, it is called slight negligence. And if ordinary care is due, such as a prudent man would exercise in his own affairs, failure to bestow that amount of care is called ordinary negligence. In each case the negligence, whatever epithet we give it, is failure to bestow the care and skill which the situation demands; and hence it is more strictly accurate, perhaps, to call it simply 'negligence.' * * * In any view the degree of care to which these defendants were bound is that

which ordinarily prudent and diligent men would exercise under similar circumstances, and in determining that the restrictions of the statute and the usages of business should be taken into account. What may be negligence in one case may not be want of ordinary care in another, and the question of negligence is therefore ultimately a question of fact to be determined under all the circumstances."

It seems to me that leaving out of consideration any willful act the negligence for which a person can be held responsible consists either in the performance of an act which under all the circumstances he is bound not to perform, or the non-performance of an act which under all the circumstances he is bound to perform.

In *Citizens Building and Loan Association* v. *Coriell, 34 N. J. Eq.* (at *p. 392*), the court said, referring to and approving an opinion by the Pennsylvania court: "It is there said that, while directors are personally responsible to the stockholders for any losses resulting from fraud, embezzlement or willful misconduct, or breach of trust, for their own benefit, and not for the benefit of the stockholders, for gross inattention and negligence, by which such fraud or misconduct has been perpetrated, by agents, officers or co-directors, yet they are not liable for mistakes of judgment, even though they may be so gross as to appear absurd and ridiculous, provided they are honest and are fairly within the scope of the powers and discretion confided to the managing body." Query, whether the last remark is quite consistent with the duty of a person becoming a director in an institution such as a building and loan association to bring to his office ordinary competency? In this case there is no charge, or at least no proof, of fraud, embezzlement or willful misconduct, or breach of trust for the benefit of the defendant, nor is there any question of a mistake of judgment. The sole question is whether the defendant was guilty of gross inattention and negligence (which means simply the failure to give such attention and to perform such acts as the circumstances required) as to make possible the fraud and misconduct which was undoubtedly perpetrated by an officer of the complainant.

*First.* The facts are as follows with respect to the South Orange loan. Roland D. Crocker was the solicitor for the association. In 1909 he conveyed the property to Mabel Daly, who immediately made a mortgage to the executors of the estate of Loehnberg, of whom defendant was one. The property was then immediately reconveyed by the Dalys to Crocker, who held title until April 1st, 1913, when he conveyed it to Arthur M. Sims, who by instrument dated on the same day mortgaged it to the complainant. Crocker caused an application to be made to the complainant for a loan on the property as early as October, 1912, in the name of Louis Wagner, for $7,000. The defendant was appointed one of the inspection committee. At a meeting of the directors held on the 25th of October, 1912, at which the defendant was present, a report of the defendant, the only one of the committee reporting, was presented, recommending a loan of $5,000. The property is clearly described in the minutes. On the 28th of February, 1913, at a meeting of the directors at which the defendant was present, it was recommended that the officers be empowered to grant such amount of the loan as should be unanimously recommended by the committee, which included the defendant. The minutes of a meeting of the directors held on March 28th, 1913, the defendant not being present, state that all the members of committee recommended that a loan of $5,000 be granted to Louis Wagner on the property in question. The next reference to the matter is in the minutes of a meeting held on April 25th, 1913, at which the defendant was not present. The minutes state:

"Referring to application for loan by Louis Wagner, Brooklyn, N. Y., to whom a loan of $5,000 was granted on property 60-62 south side of Second street, South Orange, Mr. Wagner having sold the property to Arthur Sims, and all of the committee, Mr. Frank Shulz and Mr. Thomas F. Peer and Mr. Frank Schwarzwaelder reporting in favor of loan of $5,000 to Arthur Sims on property 60-62 south side Second street, South Orange, N. J., it was, on motion of Mr. Merlinger, seconded by Mr. Stone, ordered, that the committee recommendation be received and granted."

The minutes of a meeting of May 23d, 1913, at which according to the minutes, defendant was present, state: "On motion

duly made and seconded, minutes of last meeting and special meeting were approved." And at the same meeting the treasurer's report was received, the first item of disbursement being the sum of $4,813.50 for Arthur Sims' mortgage. Again at a meeting of the directors July 2d, 1913, at which the defendant, according to the minutes, was present, the minutes of May 23d, 1913, were read and approved. It is insisted for the defendant that the fact that the minutes of May 23d and July 2d, 1913, indicate that he was present does not prove that fact, because it was a custom of the secretary to, if there was a lack of quorum, call up various members of the board and get their permission to note them as present. The defendant swears that he never knew of any loan to a man named Sims, and that therefore it must be that the secretary pursued the course heretofore adverted to with respect to these two meetings. If this be true then the defendant is unquestionably guilty of gross negligence in permitting such a practice to be pursued, and he must be held bound for such knowledge as he would have acquired if he were in fact present. In considering this phase of the case I have dealt with it as if he were in fact present at the two meetings in question, and I find as a fact that there is not sufficient evidence to indicate that the minutes are incorrect. Crocker caused to be filed a forged satisfaction of the mortgage held by the Loehnberg estate, and also caused to be filed a forged satisfaction of a first mortgage held by one Bercaw upon the property. The Bercaw mortgage was foreclosed and the property sold for less than a sufficient amount to pay anything on the subsequent encumbrances. The testimony is to the effect that the defendant examined the premises in question as executor of the Loehnberg estate upon various occasions; that he was familiar with the loan and that he received interest regularly from Crocker until he disappeared in September, 1914. It is inconceivable to me that, when he acted as an inspector upon the application of Louis Wagner, and examined, as he says, the property, he did not realize that an application was being made to the building and loan association for a loan upon property upon which he already held a mortgage. He advised the loan. He made no inquiry as to how his mortgage was going

to be taken care.   The officers were empowered to grant a loan at a meeting at which he was present, and he still took no steps either to inquire as to how his loan was going to be taken care of or to advise the association that the estate which he represented held a mortgage.   Although he was not present at the meeting held March 28th, 1913, at which the minutes state a report was made by the committee of which he was a member, recommending that a loan of $5,000 should be granted, or at the meeting of April 25th, 1913, at which time the loan was transferred from Wagner to Sims, yet he was present at the meeting of May 23d, 1913, at which the minutes of the meeting of April 25th, 1913, were approved, and he is therefore bound by knowledge of whatever appears in these minutes. the minutes of April 25th, 1913, distinctly refer to the transfer from Wagner to Sims, and describe the property, and refer to the fact that all the members of the committee, including himself, had reported in favor of the loan.   At the meeting of May 23d, 1913, he made no inquiry as to how the money due on the mortgage held by the estate that he represented would be paid, nor did he notify his fellow directors of the existence of such a mortgage.   At the same meeting the treasurer reported that he had disbursed the sum of $4,813.50 for the Arthur Sims mortgage.   Apparently, if the defendant's story is to be believed, he sat quiet when this report was presented and made no inquiry whatever to ascertain the authority of the treasurer for the disbursement of this large sum of money.   He knew that he had recommended a loan of $5,000 on property already encumbered by a mortgage under his control and from October to May made no inquiry as to what had become of the matter. The check was not paid until July 10th, 1913, so that if he had protested on May 23d, 1913, the payment of the check might have been stopped.   On July 2d, 1913, at a meeting at which the defendant was present, and before the payment of the check, the minutes of May 23d, 1913, were approved, and the Sims mortgage at least constructively called to his attention.

It seems to me that all of the circumstances indicate that with respect to this loan the defendant is guilty of such negli-

gence as renders him responsible for the loss which was occasioned to the association by reason of his failure to act.

The duties of the directors of the association are defined in section 2, article 9, of the constitution.

"Section 2. The board of directors shall meet regularly at four P. M. on the third Thursday of each and every month, at such place as they or a majority shall appoint for the purpose of receiving from the stockholders their monthly dues, interest and fines, and pay the same into the treasury; to loan out the funds and see to their safe investment, and to attend to the financial concerns of the association generally."

Article 2, section 3, provides: "No money shall be loaned on any property already encumbered."

Under the authorities to which I have referred it is no excuse to say that the defendant was ignorant and incompetent or so engrossed in his own affairs as not to be able to give proper attention to the affairs of the building and loan association. He was bound to apply to his duties as director of the building and loan association that degree of care which an ordinarily prudent man would exercise with respect to his own affairs.

The question is the amount of damages for which he may be held. If it appears that the first mortgage was foreclosed and that the property did not realize sufficient to pay the first mortgage, then, if in fact the defendant had brought to the attention of the building and loan association the existence of his mortgage, it is of course conceivable that his mortgage might have been paid off out of the proceeds of the loan, and the loan still made, and still would have resulted in the loss. It is, on the other hand, conceivable that if the existence of this second mortgage held by the Loehnberg estate had been disclosed, then an investigation would have been made which might have disclosed the existence of the prior mortgage and the rascality of Crocker and would have saved the association from any loss. Upon this point I desire to hear counsel.

*Second.* With respect to the East Orange loan. There is nothing in the minutes of the board of directors authorizing the granting of the loan to Aschenbach on the property in East Orange. The files merely show an application signed by Aschen-

bach, without date, asking for a loan of $4,000. It bears the name William B. Howell, Robert L. Hopkins, as the committee recommending it. It contains no description of the property except "Map of Ampere section of property of East Orange Ampere Loan Company." In December, 1909, William H. Daly and wife had executed a mortgage to the Loehnberg estate of which defendant was executor, for $4,000. In September, 1910, Albert B. Aschenbach and wife executed a mortgage to the complainant association for $4,000 upon the same property. The only reference to this loan is contained in the minutes of a meeting of the board of directors held on September 22d, 1910, at which the defendant was present, at which the treasurer reported a disbursement on September 4th of $3,919 on account of Aschenbach mortgage. The defendant made no inquiries with respect to this payment. If he had he would have immediately discovered that the money had been advanced upon property upon which the estate represented by him already held a mortgage. He would also have discovered that the loan had never been authorized and the disbursement therefore illegal. Unless reports of officers are to be received and approved *pro forma* and members of a board of directors excused from any investigation whatever, it seems to me that the act of the defendant was gross inattention and such negligence as make him responsible for the consequences of his inattention. I cannot conceive that he has performed his duty as a member of the board of directors, entrusted with the savings of poor investors whose duties are defined to be "to loan out the funds and see to their safe investment." Here again the question arises as to the measure of damages. The Loehnberg mortgage was foreclosed, the property bought in by the association, which still holds it. I will hear counsel upon this point.

In defence of this director it is said that he properly relied upon counsel of the association, Crocker, who up to the time he absconded in September, 1914, bore an excellent reputation. The duty of counsel is to act as legal adviser to the board, to examine the title to every security, and report thereon to the directors, to prepare obligations and contracts, and to transact the legal business of the society. The directors have no right

to shift to counsel the duty imposed upon them to loan out the funds and see to their safe investment. There is no proof before me that counsel ever reported to defendant or to the board that the title to either of the premises in question was clear. If counsel of the association had reported it would immediately have occurred to the defendant that the report was false, because a mere examination of the papers would have demonstrated that the two mortgages held by the Loehnberg estate had not been satisfied, and that the titles were not clear.

The statute of limitations is pleaded but not seriously argued. The point seems to be disposed of by the following cases: *Dailey* v. *Kiernan, 75 N. J. Law 275; Crane* v. *Ketcham, 83 N. J. Law 327; Fryer* v. *Mount Holly Water Co., 87 N. J. Law 57; Williams* v. *McKay, 40 N. J. Eq. 189; French* v. *Armstrong, 79 N. J. Eq. 283.* The fact that other directors may be also responsible for any loss which occurred by reason of the East Orange loan appears to present no objection to relief. *Stockton, Receiver,* v. *Anderson, 40 N. J. Eq. 486; Williams* v. *McKay, 46 N. J. Eq.* (at p. 39).