IN RE ESTATE OF JOHN JURGENSMEIER.
JOHN JURGENSMEIER, JR., ET AL., APPELLANTS, V. HENRY JURGENSMEIER, EXECUTOR, APPELLEE.
5 N. W. (2d) 233

FILED AUGUST 14, 1942. No. 31369.

*Lee Kelligar* and *Dwight Griffiths,* for appellants.

*Gerald M. Mullen, John C. Mullen* and *William·G. Rutledge, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

EBERLY, J.

This is an appeal from the judgment of the district court for Nemaha county affirming the decree of the county court overruling certain exceptions to, and approving and allowing, the final account of Henry Jurgensmeier, executor of the last will and testament of John Jurgensmeier, deceased.

John Jurgensmeier, Jr., and Anna Schlosser, a son and daughter of the deceased, and devisees under his will, together with Dwight Griffiths, the duly appointed guardian *ad litem* of Joseph Jurgensmeier, an incompetent son of the testator, separately appeal from the judgment of the district court.

·John Jurgensmeier, a widower, died testate on February 4, 1938, leaving an estate consisting of both real and personal property. Of this real estate the following was situated in Nemaha county, Nebraska: The west half of the northeast quarter and the east half of the northwest quarter of section 19, township 5, range 14, consisting of 160 acres, estimated by the executor on June 28, 1938, in his inventory filed, to be of the value of $16,000; the southeast quarter of section 28, township 5, range 14, likewise estimated by the executor on the date last mentioned to be of the value of $16,000; and 258 and 84/100 acres of land owned by the deceased of the value of $1,500 is also inventoried as situated in Aurora county, South Dakota. In addition, personal property of the estimated value of $2,-897.45, of which $1,420.72 was cash on deposit in banks, was made a part of the executor's inventory. Claims allowed against this estate aggregated but $1,390.

In his will the deceased bequeathed the sum of $200 to his parish priest, and gave and bequeathed to his three daughters in equal portions all of his household goods and the automobile he owned at the time of his death.

The will further provided: "Fourth: After the payments, I give, devise and bequeath the whole of my estate then remaining, real and personal, in equal portions, share and share alike, to my children, Mary Henderson, Alice Jurgensmeier, Joseph Jurgensmeier, Henry Jurgensmeier, Bernard Jurgensmeier, John Jurgensmeier and Anna Jurgensmeier, or their issue, by right of representation, the real estate herein mentioned being subject to sale by my executor for purposes of distribution prior to final settlement of my estate as in paragraph First above set forth."

The will was duly admitted to probate and Henry Jur-

gensmeier, nominated therein as executor, was so appointed by the county court and duly qualified as such.

The first paragraph of the will is as follows: "First: I hereby authorize and direct my executor to pay all of my just debts, funeral expenses, and expenses of administration, out of my estate as soon after my decease as same can conveniently be done, same to be paid out of my personal estate, not herein specifically bequeathed, if same be sufficient for such purpose, but if same is not sufficient, then I hereby authorize and empower my executor to sell so much and such of my real estate as to him seems best for such purpose, and, also for the purpose of the proper distribution of my estate as hereinafter set forth, I hereby authorize and empower my executor to sell any or all of my real estate, if same to him seems best, and to make, execute and deliver good and sufficient deeds of conveyance thereof, all without the aid or intervention of any court therefor."

Under this provision the executor first sold the "north" farm consisting of 160 acres for $100 an acre. The validity of this sale is unquestioned. Later, on March 6, 1939, at a time when no sale was necessary to secure funds for payment of the debts of the deceased or the costs of administering his estate, the "home" or "south" farm was sold by the executor at public sale for the sum of $60.50 an acre to Clara Jurgensmeier, wife of the executor. In the executor's deed conveying these premises to this purchaser, it is recited, "having elected that it seems best for me to sell said real estate for the purpose of a proper distribution of said estate of said deceased, pursuant to the power conferred upon me as such executor by the will of the said John Jurgensmeier, deceased," I do execute the conveyance to such purchaser. The executor filed his final report and petition for final settlement on August 27, 1940. Due notice of the pendency thereof was given by publication in the Nemaha County Herald, a newspaper of general circulation in such county, for three consecutive weeks. Upon the filing of the executor's final report, objections thereto were filed by two of the devisees and legatees already named. Prior to the hearing

upon these objections, Dwight Griffiths, an attorney at law, was appointed guardian *ad litem* for Joseph Jurgensmeier, a mental incompetent, who is interested in said estate as one of the devisees and legatees. The guardian *ad litem* thereupon, in behalf of his ward, filed objections to the report similar to those presented by the objectors last above mentioned. Upon hearing in the county court all objections to the final account as filed were overruled, excepting only that the executor was required to reimburse the estate to the extent of $40 overpayment made by him. Appeal was thereupon lodged in the district court for Nemaha county, where, upon hearing, the order of the county court approving the executor's final report was in all respects affirmed. The two objectors and the guardian *ad litem* prosecute appeals from the judgment of the district court to this tribunal.

The first matter presented is the challenge to the jurisdiction of the district court based on the contention, presented by a special appearance on behalf of the executor, that the transcript of the appeal from the county court was not filed in the district court "within the statutory time of within ten days after perfecting such appeal."

The chronology of events comprising the matters challenged are as follows: November 28, 1940, order of county court approving final report of executor made and entered; December 10, 1940, notice of appeal given and bond of appeal in behalf of John Jurgensmeier and Anna Jurgensmeier Schlosser given and approved; December 12, 1940, notice of appeal and request for transmission of transcript to district court given by the guardian *ad litem;* December 21, 1940, transcript of county court proceeding filed in district court.

Two sufficient reasons require us to sustain the action of the district court: First, the district court journal recording the action on this special appearance recites that "hearing is had, evidence taken." This evidence not being perpetuated and incorporated in the bill of exceptions allowed in this case, we are compelled to assume that the judgment en-

tered by the district court was in accord with the proof. Second, the record discloses that a good and sufficient appeal bond was given by the two objectors and approved by the county court on the twelfth day after the entry of the final order appealed from. The transcript was filed in the district court on the twenty-third day after the order appealed from was entered in the county court. This court has never construed promptness of appellants in filing bonds of appeal in probate cases as operating as a penalty by restricting the 40 days allowed litigants for completing their appeals. Without reference to the date of filing of appeal bond, a transcript on appeal filed on the twenty-third day after entry of order appealed from in this case is in time.

" 'A district court does not acquire jurisdiction of an appeal from an order in a probate proceeding unless within forty days from the date of the order a transcript thereof and of the proceedings relative to it is filed with the district court clerk, nor unless within thirty days from the date of such order the bond upon appeal, required by the statute, has been executed and filed.' *Jones v. Piggott,* 68 Neb. 140." *In re Estate of Nelson,* 108 Neb. 296, 187 N. W. 916. See, also, *In re Estate of Runyon,* 111 Neb. 635, 197 N. W. 417; *Jones v. Piggott,* 68 Neb. 140, 93 N. W. 1000; *In re Estate of McShane,* 84 Neb. 70, 120 N. W. 1018.

As to the challenge to jurisdiction to entertain the appeal generally, as made in the special appearance, it is answered by the following: "Upon appeal to the district court from an order of the county court adjusting or correcting the accounts of an administrator, the district court has jurisdiction of the matters tried in the county court from which the appeal is taken." *In re Estate of Wilson,* 97 Neb. 780, 151 N. W. 316.

The contention of appellants here presented is that the district and county courts erred in approving and allowing the final account of the executor, Henry Jurgensmeier, without requiring him to account for the reasonable value of the "home farm," described as the southeast quarter of section 28, township 5, range 14, Nemaha county, Nebraska, at its

established reasonable value of $100 an acre, or $16,000, and in permitting him to account for that real estate on a valuation of $60.50 an acre, or $9,680, the price for which such real estate was purchased at public sale in the name of the executor's wife, Clara Jurgensmeier.

Our statute relating to this subject is as follows: "The executor or administrator making the sale and the guardian of any minor heir of the deceased shall not directly or indirectly purchase, or be interested in the purchase of any part of the real estate so sold; and all sales made contrary to the provisions of this section shall be void; but this section shall not prohibit any such purchase by a guardian for the benefit of his ward." Comp. St. 1929, sec. 30-1118.

In consideration of this statute and its applicability to a case then before this court, in *Johnson v. Erickson,* 110 Neb. 511, 194 N. W. 670, Good, J., in delivering the opinion of the court upon issues in part quite similar to those here presented, stated the applicable rules as follows:

"Defendants urge that the sale to Hulquist by the executors was not a judicial sale, because it was made pursuant to a power conferred by the will, and that it is, therefore, not governed by the provisions of section 1408, Comp. St. 1922, which declares that an executor's sale of a decedent's real estate shall be void if the executor is the purchaser, or is interested in the purchase, of the land. It may be conceded that said section refers only to judicial sales made pursuant to an order of the district court, but plaintiff's right to maintain the action is not dependent upon this statute. Under the rule at common law, an executor could not purchase, either directly or indirectly, at a sale of his decedent's lands under a power in the will. *O'Dell v. Rogers,* 44 Wis. 136. The reason for the rule would be the same in either case. It is but a general application of the rule against the purchase by the trustee of property belonging to the trust estate. It is founded upon the unfairness that is likely to follow upon a sale in which the same person is both vendor and purchaser.

"Defendants further urge that the sale is not subject to

attack, because the land was sold for its full value and no one was defrauded. The rule, however, is that actual fraud is not necessary to invalidate such a sale. 'And it matters not if he pays all the property is worth, nor if the sale is advantageous to the *cestui que trust*. It is a matter, of course, for courts of equity to set the sale aside upon the application of the *cestui que trust*. The object of the rule is to afford the *cestui que trust* the most ample protection against fraud and injustice, and to remove out of the way of the trustee all inducements and temptations to speculate upon the trust property, or to manage and manipulate the same for his own benefit.' *Terwilliger v. Brown*, 44 N. Y. 237. And in *Miller v. Rich*, 204 Ill. 444, it is said: 'It makes no difference, in such case, that the intentions of the administrator are honest, and that there is no fraud in fact. The sale will be set aside upon the general ground that trustees, and others occupying fiduciary relations, cannot purchase on their own account the property entrusted to their management.' A full collection of the authorities upon this question may be found in the note to *Haymond v. Hyer*, L. R. A. 1918B, 1" See, also, *Veeder v. McKinley-Lanning Loan & Trust Co.*, 61 Neb. 892, 86 N. W. 982; *Meade v. Vande Voorde*, 139 Neb. 827, 299 N. W. 175; 24 C. J. 174.

Neither the principles here involved nor their application to the instant case are novel. They have long been established as the law of the land.

In *Bassett v. Shoemaker*, 46 N. J. Eq. 538, 20 Atl. 52, a case where the wife of an executor sought to purchase at her husband's sale through the intervention of an agent employed by her, and wherein the court below set aside the sale, even refusing to permit Mrs. Bassett to produce evidence to show that the sale was a fair one and for the best price that could be obtained, the supreme court of New Jersey sustained the action of the trial court, and in its discussion the New Jersey court employed the following language:

"The leading case of *Davoue v. Fanning*, 2 Johns. Ch. 251, presents facts substantially like the case before us. Chancellor Kent held that other parties interested were entitled

to come in and set aside the sale to the wife as a matter of course. He says: 'However innocent the purchase may be in the given case, it is poisonous in its consequences. The *cestui que trust* is not bound to prove, nor is the court bound to judge, that the trustee has made a bargain advantageous to himself. The fact may be so, and yet the party not have it in his power distinctly and clearly to show it. There may be fraud, as Lord Hardwicke observed, and the party not be able to prove it. It is to guard against this uncertainty and hazard of abuse, and to remove the trustee from temptation, that the rule does and will permit the *cestui que trust* to come, at his own option, and without showing actual injury, and insist upon having the experiment of another sale. This is a remedy which goes deep and touches the very root of the evil.'

"This rule has been fully adopted into the law of this state. The incapacity of the trustee to become a purchaser at his own sale, rests upon the ground of public policy. It is wholly immaterial whether the property brings it full value. *Culver v. Culver,* 3 Stock. 215; *Mulford v. Bowen,* 1 Stock. 797.

"The exclusion of the wife as a purchaser, where the husband sells as a trustee, is not so much for the reason that he may subsequently become entitled to some interest in her lands, as on account of the unity which exists between them in the marriage relation. The case falls clearly within the spirit of the principle which excludes the husband himself."

*Romaine v. Hendrickson's Executors,* 12 C. E. Gr. 162, affirmed in 1 Stew. Eq. 275, was also cited to support the conclusion stated in the *Bassett* case.

But the facts in the instant case clearly disclose that the mischief that both the statutory provision quoted and the rule at common law heretofore quoted and discussed were intended to prevent was present in the instant case. The *cestui que trustents* did not receive the equal and undivided allegiance of this executor in either the sale or the events that led up to the same. Throughout the entire course of this sale the executor's wife consulted and conferred with

him about her bids and obtained his recommendation and advice. There is no evidence in the record that the executor extended similar help and encouragement to the other bidders at this sale. After the land had been sold to the executor's wife, she gave a check for the down payment in the amount of $1,462, and subsequently a check of $8,218 in payment of the balance of the purchase price. The bank account on which these checks were drawn was one kept by the executor for his own personal use, on which his wife was permitted to draw checks. The form of this deposit on which the checks were drawn is not definitely shown. The inference sought to be established by the executor is that it was a joint account. There is evidence in the record that Henry Jurgensmeier and his wife own two farms jointly, in addition to the one purchased at this sale. There is no evidence that any profits from these two farms so owned, in which Clara Jurgensmeier had an actual interest, formed any part of this bank deposit. The evidence is that the sole income of the latter was limited to the proceeds derived from cream and eggs which was mostly applied to household expenses. It affirmatively appears, however, that this bank account upon which the checks under consideration were drawn was made up of money which the executor had obtained through his farming activities and through speculation, and, in addition, was the account in which was deposited the moneys derived from his inheritance in his father's estate.

Under the circumstances of this case, it cannot be denied that the executor's personal funds were employed in making the down payment and that he contributed in addition thereto approximately $2,000 that was used for the payment of the purchase price of this land so sold by this executor. As to the other $6,000 necessary to complete the payment of this purchase price, it was ultimately obtained by mortgaging the real property purchased from the Jurgensmeier estate upon a note and mortgage executed by Henry Jurgensmeier, not merely as husband of the mortgagor, but as principal on both instruments. They were executed by "Henry

Jurgensmeier and Clara Jurgensmeier, husband and wife," the former being an express party to all of the covenants and agreements thereof. It thus clearly appears from all of the evidence that Henry Jurgensmeier was not only "interested in the purchase" of this real estate so sold by him as executor, but that he acted in participation with his wife "indirectly" to purchase the same. It follows that the transaction was clearly proscribed by the authorities already discussed.

We do not overlook the contention that the heirs have ratified the executor's sale under consideration. Undoubtedly certain of them have. Considering the record as an entirety, and giving due weight to all of the facts and circumstances involved, we are satisfied that the appellants herein, John Jurgensmeier and Anna Schlosser, are not subject to the charge of ratification, and are not affected by the action of their brothers and sisters, and neither are they estopped to prosecute the instant proceeding. In this class of cases, the rule appears to be: "In this connection it has been held that each of the persons interested has an individual election, and a ratification by some of the heirs or devisees will not preclude a repudiation by the others." 24 C. J. 637.

This principle has long been recognized in our jurisprudence. Thus, in an early case involving a situation similar to that here presented, it was said: "The heirs are the *cestui que trusts*. * * * The heirs, therefore, or their assignees, have an election to avoid or confirm the sale. And in doing this, they are not bound to act jointly. Each one has an individual election. If the affirmance of the sale by some, and the avoidance of it by others, will produce a great inconvenience in the final settlement of the estate, it will fall, where it ought, upon the administrator, who has violated his trust and by his wrongful act caused the embarrassment. *Houghton v. Hapgood,* 13 Pick. 154; *Grout v. Hapgood,* 13 Pick. 159; *Jennison v. Hapgood,* 14 Pick. 345." *Litchfield v. Cudworth,* 15 Pick. (Mass.) 23, 31.

As to the situation of Joseph Jurgensmeier, the incompetent, and his guardian *ad litem,* the unquestioned rule ap-

plicable is that neither the incompetent ward nor the guardian of such incompetent possesses the power to consent that the executor of an estate, in which the ward has an interest, may purchase property of the estate, either directly or indirectly; and where the executor does so purchase the property, the guardian cannot ratify the sale so as to bind the incompetent. *Moore v. Carey*, 116 Ga. 28, 42 S. E. 258; 21 Am. Jur. 734, sec. 629.

It is obvious that the appellants are entitled to the relief at the hands of this court which their respective situations may justify.

By the terms of the Constitution, county courts are constituted "courts of record, and shall have original jurisdiction in all matters of probate, settlement of estates of deceased persons," etc. Const. art. V, sec. 16. See *Weeke v. Wortmann*, 77 Neb. 407, 109 N. W. 503; *State v. O'Connor*, 102 Neb. 187, 166 N. W. 556; *Genau v. Roderick*, 4 Neb. (Unof.) 436, 94 N. W. 523.

Under this constitutional provision we are committed to the view: "Under the Constitution (art. V, sec. 16) and statutes of Nebraska (Comp. St. 1929, sec. 27-503) the county court has exclusive original jurisdiction of all matters relating to the settlement of the estates of deceased persons." *Starr v. Fidelity & Deposit Co.*, 134 Neb. 240, 278 N. W. 478.

By statute it is further provided: "The county court shall have power: * * * Fifth. To require executors, administrators and guardians to exhibit and settle their accounts, and account for the estates and property that have come into their possession as such." Comp. St. 1929, sec. 27-504.

In carrying out this statutory authorization, it is to be remembered that county courts are without general equity jurisdiction, but, in exercising exclusive original jurisdiction over estates, may apply equitable principles to matters within probate jurisdiction. *In re Estate of Frerichs*, 120 Neb. 462, 233 N. W. 456; *In re Estate of Wilson*, 97 Neb. 780, 151 N. W. 316.

We are also committed to the doctrine: "Under Const.

Neb. art. VI, sec. 16, giving county courts probate jurisdiction, but denying them jurisdiction in actions in which title to real estate may be drawn in question, * * * the probate court, when acting in discharge of powers granted to it, has the incidental right to construe a will disposing of real property for the purpose of appropriately discharging its duty, notwithstanding the apparent constitutional limitation." *Logue v. Ferris,* 280 Fed. 286.

In connection with the foregoing the principle is also established that, "When a county court acquires jurisdiction of the subject-matter and of the parties in a proceeding to settle the estate of decedent, its final judgment therein as to the amount due the estate from the administrator is not reviewable except on direct appeal and is not open to collateral attack except for fraud." *Starr v. Fidelity & Deposit Co.,* 134 Neb. 240, 278 N. W. 478.

It would seem that the above and foregoing provisions of Constitution and statute evidence the vesting in the county court of ample and sufficient power to determine the questions involved in this litigation.

Under authority conferred and directions contained in paragraph "First" of the last will of John Jurgensmeier, deceased, in connection with the following words contained in the "Fourth" paragraph thereof, "the real estate herein mentioned being subject to sale by my executor for purposes of distribution prior to final settlement of my estate as in paragraph First above set forth," there ensued an equitable conversion of the real estate mentioned therein to personal property for the purpose of the provisions of this will. For, in the construction of wills and of other instruments, when lands are thereby or therein directed to be sold and turned into money courts of equity in dealing with the subject will ordinarily consider it personalty. 13 C. J. 859; 18 C. J. S. 58, sec. 17; *Stalder v. Stalder,* 105 Neb. 367, 180 N. W. 566; *Chick v. Ives,* 2 Neb. (Unof.) 879, 90 N. W. 751; *In re Estate of Kulp,* 122 Neb. 157, 239 N. W. 636; *Maxwell v. Maxwell,* 106 Neb. 689, 184 N. W. 227.

Whether the equitable conversion of the real estate to per-

sonal property in the instant case was effected at the death of the testator, or on the declaration of the election of the executor as evidenced by his deed of conveyance, or at the date of the executor's sale of the lands in suit, it was the duty of the executor to account to the legatees named in his final report for such real estate as for personalty in his possession for distribution. He was liable to each of the legatees named in his decedent's will on that basis. And in the instant case, it appearing that the sale by the executor was unlawfully made, that he in fact secured an interest in the property sold by him, and was an indirect purchaser thereof, he is chargeable with, and at the election of the beneficiaries must in his final report account for, the actual value of the property involved which is established by the evidence herein as the sum of $16,000, and not merely with the amount realized at the sale. 24 C. J. 176; *Brown v. Reed,* 56 Ohio St. 264, 46 N. E. 982; *Estate of McClear v. Root,* 147 Wis. 60, 132 N. W. 539; *Froneberger v. Lewis,* 70 N. Car. 456; *Stilly v. Rice,* 67 N. Car. 178; *Estate of Scheidt,* 2 Woodw. Dec. (Pa.) 355; *Moore v. Hilton,* 12 Leigh (Va.) 1; *Morrison v. Garrott,* 15 Ky. Law Rep. 305, 22 S. W. 320; *Tayloe v. Tayloe,* 108 N. Car. 69, 12 S. E. 836; *Daly v. Brown,* 39 Can. S. Ct. 122.

In the instant case, due to the unlawful and fraudulent acts of the executor, the legatees of the will have sustained a loss and impairment of their rights in the decedent's estate through his official acts. It is obvious that the executor should be compelled to report the existence and value of the decedent's property which his unlawful acts deprived the beneficiaries of; that the probate court in the exercise of its original jurisdiction should have determined on the hearing of the executor's final report in this estate the amount and value of decedent's property including the actual value of the real estate herein unlawfully sold by such executor, and should have required him to account for the same on the basis of its actual value; and should have charged him with the difference between the price paid by his wife, Clara Jurgensmeier, and the actual value of the premises sold.

It is, therefore, ordered that the decree of the district court be affirmed in so far as it requires the executor to reimburse the estate of John Jurgensmeier, deceased, in the amount of $40 for the payment to himself of executor's fees in excess of the amount specified. In all other respects the decree of the district court is reversed, with directions to require the executor to account for the real estate described as the southeast quarter of section 28, township 5, range 14, on the basis of its reasonable value of $16,000, taxing the costs of this appeal in this court to the executor.

REVERSED.