IN RE ESTATE OF SOLON L. WILEY, DECEASED. WILLIAM L.
SHEARER ET AL., APPELLANTS, v. EMMET S. BRUMBAUGH,
ADMINISTRATOR WITH WILL ANNEXED, OF THE ESTATE
OF SOLON L. WILEY, DECEASED ET AL., APPELLEES.

36 N. W. 2d 483

Filed March 11, 1949.   No. 32483.

*Munger & Rhodes,* for appellants.

*Gray & Brumbaugh, Will H. Thompson, Lee & Bremers,* and *Richard W. Lee,* for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

WENKE, J.

This action arises in connection with the administration of the assets of the estate of Solon L. Wiley who died testate on July 5, 1926, a resident of Douglas County. The will of the deceased was allowed and admitted to probate by the county court of Douglas County on September 3, 1926. William L. Shearer and Walter S. Wiley were nominated in said will to be the executors of the estate and pursuant thereto the county court, on the same day the will was allowed and admitted to probate, appointed them to act as such. They qualified on September 14, 1926, and continued to act in that capacity until they resigned. They resigned on July 16, 1942. However, prior to resigning they made a final report and accounting as executors dated May 20, 1942. Objections were filed thereto, a hearing was had thereon, and the county court entered judgment against the executors.

On appeal from the county court a trial was had in the district court for Douglas County. The district court found that the executors had failed to account for cer-

tain assets of the estate which assets William L. Shearer, one of the executors, had, on November 21, 1931, converted to his own use. The court then charged the executors, William L. Shearer and Walter S. Wiley, and each of them, with the reasonable market value of the assets so converted in the sum of $28,000 with interest thereon at four percent from that date.

The court further found that the waivers, assignments, and conveyances executed by Helen S. Saxe and Marion A. Chapman, devisees and legatees under the will of Solon L. Wiley, to William L. Shearer were procured by him through misrepresentation and without consideration and because thereof caused them to be vacated, canceled, and set aside.

From this judgment William L. Shearer and Walter S. Wiley appeal and Emmet S. Brumbaugh, administrator with the will annexed of the estate of Solon L. Wiley, deceased, Will H. Thompson, intervener, and Helen S. Saxe and Marion A. Chapman, heirs and beneficiaries of the will of Solon L. Wiley, deceased, cross-appeal.

Emmet S. Brumbaugh was appointed and qualified as administrator with the will annexed of the estate after the resignation of William L. Shearer and Walter S. Wiley, the executors.

Solon L. Wiley at the time of his death was 85 years of age. He left surviving him as heirs at law three children and two grandchildren, all of whom are beneficiaries under the provisions of his will. The three children are Walter S. Wiley, a son, Ruth Harrison, a daughter, and Anna Katherine Shearer, a daughter. The two grandchildren are Helen S. Saxe, a granddaughter, and Marion A. Chapman, a granddaughter.

Solon L. Wiley was married twice, his wives being sisters. The first wife was Anna C. to whom was born a son, Walter S. Wiley, one of the executors herein, and a daughter, Edith Anna Wiley, who through marriage became Edith Anna Sherwin. To this marriage two

children were born, namely, Helen S. Sherwin and Marion A. Sherwin. Edith Anna died before her father and at the time of his death both grandchildren had married and were then and are now Helen S. Saxe and Marion A. Chapman. The second wife was Kate M. to whom was born two daughters, namely, Ruth and Anna Katherine. Anna Katherine married William L. Shearer, one of the executors of the estate, and Ruth married Thomas S. Harrison.

For the purpose of convenience we shall refer to Solon L. Wiley, the person whose estate is herein involved, as Solon L. Wiley in all matters discussed before his death and as deceased in all matters discussed after his death; to appellant William L. Shearer as Shearer; to appellee Emmet S. Brumbaugh, administrator with the will annexed, as the administrator; to appellee Will H. Thompson, attorney for the executors during most of the period herein involved, as Thompson; and to appellees Helen S. Saxe and Marion A. Chapman, who are heirs of the deceased and beneficiaries under his will, as heirs.

In its inception the relationship of the parties was such that the principle is applicable that no one should attempt to serve another when he claims personal interests that conflict therewith. The evidence shows that the personal interests of both executor Shearer and his counsel, Thompson, conflicted with that of the estate. Out of that situation, when choice was made by the executor between his claimed personal interest and his duty to the estate, the trouble herein involved began.

This proceeding is to require an accounting by the executors and to force them to bring the assets of the estate into court to be turned over to the administrator for the purpose of distribution. We will therefore only determine the issues necessarily involved therein. When such an accounting has been made and the assets of the estate fully accounted for the question of claims, whether properly allowed, waived, outlawed, or filed

out of time, can be determined. Also at that time the expenses of administration, including the allowance of attorney's fees and other expenses relating to the administration of the estate but not executors' fees, which are herein denied, can also be determined and the assets applied and distributed to those entitled thereto in the manner required by law. We do not herein determine any of the rights of Thompson for services rendered, expenses had, or costs advanced for the deceased in his lifetime as they relate to the assets of the estate, including any claim to or lien on the proceeds of the contract of sale of the Wyoming ranch. However, as to the moneys Thompson handled and distributed for the executors while acting as their counsel there must be an accounting. We will consider that issue in connection with our disposition of the final accounting by the executors.

The record establishes that Solon L. Wiley, on December 24, 1919, entered into a contract with Robert S. Trumbull for the sale of the Wiley ranch located in Park County, Wyoming. The ranch was referred to in the contract as about 2,400 acres and was sold for a consideration of $50,000. However, subsequently, but during the lifetime of Solon L. Wiley, the agreed acreage of the ranch was reduced to approximately 2,000 acres and the consideration to $48,000. This was done pursuant to the provisions of a supplement attached to the contract.

The evidence further establishes that, in April 1923, Solon L. Wiley assigned his interest in this contract, together with his interest in a contract for the sale of some Sarpy County, Nebraska, lands, to Shearer as security for an advance of $1,800.

In this connection it should be said that the evidence is clear and conclusive that the assignment of Solon L. Wiley's interest in the contract for the sale of the Wiley ranch in Wyoming, insofar as Shearer is concerned, was solely to secure the $1,800 which Shearer

advanced at that time. It was not given to secure any other moneys that Shearer claims he advanced to Wiley. But even if it had been given for the latter purpose the evidence offered by Shearer to establish such advances was insufficient and entirely inadequate. It completely fails to establish any advances for which it could be held if any agreement for that purpose had been entered into.

After Shearer had secured the interest of Solon L. Wiley in the contract for the purpose of securing his advance of $1,800 a modification of the contract was entered into on May 5, 1925. This modification related to the removal of four houses from the ranch to some lots in Cody, Wyoming, and the addition of those lots in Cody, to which the houses had been moved, as security for the purchase price. While the contract with Trumbull, in which these changes were made, was in the name of Shearer the evidence is clear and conclusive that Shearer's only interest therein was that he held it as security for his advance of $1,800 and that Solon L. Wiley was the actual owner of the contract and remained the owner thereof, subject to that assignment, at the time of his death on July 5, 1926. The evidence further establishes that it was so considered and treated by the executors at all times until Shearer claimed to be the owner thereof. This will be more fully discussed hereinafter.

Appellant's principal contention is that the county court of Douglas County was without jurisdiction to determine the questions herein involved.

Ordinarily the nature of a contract for the sale of land is determined by the law of the jurisdiction wherein the land is situated. As stated in Restatement, Conflict of Laws, § 209, p. 298: "Whether interests in land are equitably converted into personal property by dealings with the land depends upon the law of the state where the land is." See, also, 2 Beale, Conflict of Laws, § 209.1, p. 935; 18 C. J. S., Conversion, § 4, p. 47; 11 Am. Jur.,

Conflict of Laws, § 64, p. 351; Morris v. Linton, 74 Neb. 411, 104 N. W. 927.

However, appellants neither plead nor proved the law of Wyoming where the ranch was located and, in the absence thereof, we have said: "The rule is that, in the absence of pleading and proof to the contrary, Nebraska courts presume that the law of the foreign jurisdiction which should be applied is the same as the Nebraska law, as to Constitution, statutes, and case law." Forshay v. Johnston, 144 Neb. 525, 13 N. W. 2d 873. See, also, Banks v. Metropolitan Life Ins. Co., 142 Neb. 823, 8 N. W. 2d 185, and In re Application of Blackwell, Blackwell v. Pszanowski, 145 Neb. 256, 16 N. W. 2d 158.

In this jurisdiction we have held: "An executory contract for the sale of land vests the equitable ownership of the property in the purchaser, and in such case the seller retains the legal title as security for the deferred installments of the purchase price." Jewett v. Black, 60 Neb. 173, 82 N. W. 375. "In an executory contract for the sale of real estate equity treats the vendor as the trustee of the purchaser and the purchaser as the trustee of the purchase money for the vendor. This rule rests upon the doctrine that equity considers that done which ought to be done. * * * In an executory contract for the sale of real estate the title retained by the vendor is security for the payment of the unpaid purchase money." Hendrix v. Barker, 49 Neb. 369, 68 N. W. 531. See, also, Dodge County v. Burns, 89 Neb. 534, 131 N. W. 922, 35 L. R. A. N. S. 877. This seems to be the general rule in most jurisdictions. See Inghram v. Chandler, 179 Iowa 304, 161 N. W. 434, L. R. A. 1917D 713, and Griggs Land Co. v. Smith, 46 Wash. 185, 89 P. 477.

And, even though the foregoing was not here controlling, it would appear that the general rule is the law of Wyoming. In the case of Baldwin v. McDonald, 24 Wyo. 108, 156 P. 27, it was held: "In equity, the vendee of land is treated as the beneficial owner, and the vendor

as owner of the purchase money, becoming, as to the land, trustee for the vendee, subject to the latter's performance, and the vendee, as to the purchase money, trustee for the vendor, who has a lien on the land or the vendee's equitable estate."

Having determined, under this doctrine, that the contract of sale is personal property its course of descent is controlled by the laws and courts of Nebraska where the owner was a resident. We said in Richards v. Estate of Gilmore, 140 Neb. 165, 299 N. W. 365, that: "Defendant contends that a determination of the litigants' rights involves the 'title to land' and that this is 'an action upon a contract for the sale of real estate,' subjects forbidden by statute to the jurisdiction of the county court. Under familiar equitable principles, where the owner of real estate enters into a valid contract for the sale thereof, the real estate is regarded as converted into personalty and it is so treated when the vendor dies. Davie v. Davie, 47 Wash. 231, 91 Pac. 950; Annotation, Ann. Cas. 1914D, 419; 19 Am. Jur. 11, 15, secs. 11, 15. Thus, not the title to land but the right to personal property, the money to be paid by vendee, is here involved." See Cleveland Trust Co. v. Armstrong, 3 Ohio O. 6.

We stated in Starr v. Fidelity & Deposit Co., 134 Neb. 240, 278 N. W. 478, that: "The county court is by the Constitution and statutes of the state given exclusive original jurisdictional of all matters relating to the settlement of estates of deceased persons." And in In re Estate of Statz, 144 Neb. 154, 12 N. W. 2d 829, we said: "By the Constitution, article V, sec. 16, and section 27-503, Comp. St. 1929, the county court has exclusive original jurisdiction of all matters relating to the settlement of the estates of deceased persons. In re Estate of Jurgensmeier, 142 Neb. 188, 5 N. W. 2d 233. Section 27-504, Comp. St. 1929, provides in part: 'The county court shall have power: * * * Fifth. To require executors, administrators, and guardians to exhibit and settle

their accounts, and account for the estates and property that have come into their possession as such.' This court recently held in In re Estate of Jurgensmeier, supra, 'In carrying out this statutory authorization, it is to be remembered that county courts are without general equity jurisdiction, but, in exercising exclusive original jurisdiction over estates, may apply equitable principles to matters within probate jurisdiction (and render to the parties interested in the assets of the estate such relief as their respective situations may justify). In re Estate of Frerichs, 120 Neb. 462, 233 N. W. 456; In re Estate of Wilson, 97 Neb. 780, 151 N. W. 316.' See, also, 34 C. J. S. 965, sec. 840; 33 C. J. S. 1011, sec. 79; Dame, Probate and Administration (3d ed.) 12-15, secs. 13, 14, and 15. Such jurisdiction and authority of the county court continue until the executor or administrator has fully complied with all its judgments, orders, and decrees and the estate has been placed in the possession of those to whom it devolves. In re Estate of Wilson, 98 Neb. 852, 154 N. W. 717; In re Estate of Hansen, 117 Neb. 551, 221 N. W. 694; 3 Woerner, American Law of Administration (3d ed.) 1756, sec. 506, and 1963, sec. 572; 1 Woerner, American Law of Administration (3d ed.) 513, sec. 150; Dame, Probate and Administration (3d ed.) 578, sec. 567. * * * Therefore, the county court has the power to require an executor or an administrator, whose office is ended, to render a true and just account of all the assets and property that have come into his possession as such (34 C. J. S. 952, sec. 833), and if the executor or administrator is deceased, the citation may issue to compel his personal representative and his bondsmen to make such an accounting. Dame, Probate and Administration (3d ed.) 11, sec. 12; 24 C. J. 933; 34 C. J. S. 949, sec. 831."

In Fischer v. Sklenar, 101 Neb. 553, 163 N. W. 861, we approved the following: " '* * * The right or title of the decedent to property claimed by the executor or administrator against third persons, or by third per-

sons against him, as well as claims of third persons against creditors, heirs, legatees, devisees, or distributees, must, if an adjudication become necessary, be tried in courts of general jurisdiction, unless such jurisdiction be expressly conferred on probate courts.' 1 Woerner, American Law of Administration (2d ed.) sec. 151."

However, that is not the situation here. We do not find, nor has any opinion of this court been cited, directly passing upon the county court's jurisdiction when the issue as to ownership of personal property is between the representative of an estate, as such, and his individual right thereto. We are of the opinion that the general rule referred to in the case of Security-First Nat. Bank of Los Angeles v. King, 46 Wyo. 59, 23 P. 2d 851, 90 A. L. R. 125, is a proper application of the county court's authority under our Constitution and statutes. Therein the court said: "It is contended by counsel for defendants that the trial court, sitting in probate, had no jurisdiction to determine the title to the property in dispute, and that it was right in so holding. It is true that this is the rule in cases in which a third party claims property as against the representative of the estate. 24 C. J. 942. But, due mainly to the necessities of the case, the rule is, by the weight of authority, otherwise when the representative himself claims such property. Stevens v. Superior Court, 155 Cal. 148, 99 Pac. 512, 514; Estate of Fulton, 188 Cal. 489, 205 Pac. 681; Bauer v. Bauer, 201 Cal. 267, 256 Pac. 820; Estate of Kelpsch, 203 Cal. 613, 265 Pac. 214, 215; Estate of Roach, 208 Cal. 394, 281 Pac. 607; Linthicum v. Polk, 93 Md. 84, 48 Atl. 842, 844; In Re Martin's Estate, 82 Wash. 226, 144 Pac. 42; In re Parker's Estate, 189 Iowa 1131, 179 N. W. 525; Matter of Watson, 215 N. Y. 209, 109 N. E. 86. * * * '* * * It seems clear to us that the probate court must necessarily have the power to incidentally try and determine such an issue between the executor or administrator and the estate in the matter of the settlement of his exhibits or accounts.' (Stevens v. Superior Court, supra.)"

In order to carry out the exclusive original jurisdiction which our Constitution has given to county courts in all matters relating to the settlement of the estates of deceased persons it seems clear to us that these courts must necessarily have this power, as an incident thereto, in requiring executors and administrators to settle their accounts and therein account for all property that has come into their possession.

That the county court has the power to require executors and administrators to exhibit and settle their accounts and to account for all assets of the estate that have come into their possession and to hold them liable for the actual value of any property which they have unlawfully appropriated to their own use has been fully settled by this court. See, In re Estate of Jurgensmeier, 142 Neb. 188, 5 N. W. 2d 233, and In re Estate of Statz, *supra*.

Having come to the conclusion that the deceased, at the time of his death, was the owner of the contract of sale of the Wyoming ranch and that it was personalty and a part of the assets of his estate and subject to the jurisdiction of the county court of Douglas County the next question that arises is, did the executors properly handle this asset and account therefor? If not, for what amount are they liable and from what date? In the discussion of these questions we will not go into too much detail but refer only to major incidents because the record is voluminous and, except for the oral testimony of Shearer, is almost undisputed as it relates to these questions.

After Solon L. Wiley died the executors qualified and thereafter filed an inventory. In this inventory they reported the contract as a part of the assets. They also reported the contract of sale of the Sarpy County land. Thereafter, on December 20, 1926, the executors secured the county court's approval of a settlement of the Sarpy County contract for an amount sufficient to pay Shearer the $1,800 which he had advanced in 1923, and for which he held the contracts on both the Sarpy County land and Wyoming ranch as security. As a result of this approval

Shearer received the sum of $2,458 by check dated December 23, 1926. This was the full amount of his loan with interest thereon at the rate of ten percent.

In 1927 Trumbull sought to settle the amount due on the contract for $29,000. This offer was submitted to the heirs and beneficiaries under the will for their acceptance, subject to approval by the county court. While this compromise was never completed the executors at that time fully recognized the contract as an asset of the estate and sought the approval of the settlement by all parties interested in the estate.

Then, in 1930, because of default by Trumbull, Shearer brought an action in the Federal District Court for the District of Wyoming to foreclose this contract. Upon sheriff's sale he bid in his own name on all the lands and properties covered by the contract and upon confirmation thereof the sheriff's deed, dated November 21, 1931, was executed to him.

In 1932, after Shearer had acquired title in his own name to all of the properties covered by the contract, to wit, the ranch and the properties in Cody, he submitted to the heirs, who are the beneficiaries under the will, the question of whether or not he should transfer the properties in Cody, or a part thereof, in settlement of the J. D. Cook claim of $3,000. Subsequently these properties were transferred in settlement of that claim and attorney's fee due W. E. Mullen, who had acted as attorney for Shearer in the foreclosure of the contract in the Federal District Court for the District of Wyoming.

This Cook claim arose out of a settlement made with the creditors of Solon L. Wiley who had started an ancillary probate proceeding of his estate in Park County, Wyoming. This settlement had been approved by the county court of Douglas County on January 14, 1929.

The evidence establishes that for many years after Shearer took the title to this land in his own name he continued to treat it as belonging to the estate. As stated

by the administrator in his brief: "The record in this case contains no evidence whatever that Shearer at any time, from the death of Wiley in 1926, when he was appointed executor, until September of 1941, ever claimed title or ownership to the Wiley Ranch." The evidence also establishes that the heirs, who are the beneficiaries of the estate, were at all times fully aware that the contract was in Shearer's name and had been even prior to Solon L. Wiley's death. They were also fully aware that he took the lands in his own name at the time he foreclosed the contract and that he did so with their knowledge and approval.

Parties handling properties in a fiduciary character should not take them in their own name and to do so will ordinarily make them liable for a conversion thereof. See In re Estate of Boschulte, 130 Neb. 284, 264 N. W. 881. However, when it is done with the knowledge and approval of all parties having an interest therein we will not hold the party taking the property in his own name liable until such time as it is shown he actually intended to and did convert the property to his own use. This the evidence shows Shearer did on October 1, 1941, when he conveyed the ranch to Carl O. Thomsen for a consideration of $22,000 and thereafter failed and refused to account to the estate for the purchase price.

We also find that the $22,000 received for the ranch is the actual value thereof and that the proceeds of the sale must be accounted for by the executors as assets of the estate. The executors must also account for all other funds received and disbursements made by them, including all items handled either by the executors or their counsel. In view of the manner in which the executors handled the estate and since it was done with the knowledge and approval of all parties interested therein we shall make the accounting continuous from the time the executors were appointed and qualified up to October 1, 1941, when the ranch was sold, without figuring interest on any of the items thereof.

The record shows that during this period, other than the $22,000 received by Shearer for the ranch, the executors received the sum of $3,152.77 and properly expended the sum of $11,368.84. This leaves a net balance with which the executors are chargeable as of October 1, 1941, of $13,783.93.

To the answer filed by Thompson dated May 8, 1942, is attached a statement of receipts and disbursements had by him in connection with the estate. It would appear Thompson received funds for the estate, either direct or through the executors, and made disbursement therefrom. The evidence is insufficient to properly determine what balance is owing by Thompson to the administrator. Hearing should be had on this matter in the county court and the amount owing by Thompson should be determined and ordered paid by him to the administrator. If any balance is found due to the administrator from Thompson, both he and the executors should be made liable therefor because it was the duty of the executors to handle these funds. Of course, Thompson would be primarily liable.

Reference is made to the compromise settlement made with J. D. Cook. This arose in connection with the ancillary probate proceedings of the estate had in Park County, Wyoming. It is suggested that the executors' account be charged therewith because the county court of Douglas County did not have authority to approve the settlement. This settlement was made with full knowledge of all parties interested in the estate and with their approval. The properties in Cody were accordingly transferred in settlement thereof. These parties cannot now be heard to complain of what the executors did when it was done with their full knowledge and approval. We find no merit in this contention.

Appellees, by their cross-appeal, raise the question as to the interest rate with which executors should be charged. Section 45-103, R. S. 1943, in force at the time the property was converted by Shearer, provides for

interest at the rate of six percent. We said in In re Estate of Jurgensmeier, 145 Neb. 459, 17 N. W. 2d 155, that: "County courts should compel the representatives of estates to charge themselves with interest in their account when; by doing some unauthorized act they have abused their trust or have been guilty of some fault or wrong in its performance and are surcharged because thereof. Interest should be upon the amount so surcharged at the legal rate from the date of such unauthorized act." The executors should be charged interest at six percent from October 1, 1941, on the sum of $13,783.93 with which they are here charged.

In view of the record all costs should be charged to the appellant Shearer and, in consideration of the manner in which the estate was handled by the executors they are not entitled to any fees, statutory or otherwise, for their services as such.

The appellant contends that the trial court erred in finding that the waivers, assignments, and conveyances to William L. Shearer by Helen S. Saxe and Marion A. Chapman, heirs and beneficiaries under the will of Solon L. Wiley, deceased, were procured by misrepresentation and wholly without consideration. These instruments were made between parties standing in a confidential relationship. The evidence establishes that they were executed upon representations that the quitclaim deed was needed to cure a technicality in the title and the waiver and assignment on the basis that it was to be used by Shearer in a controversy with Thompson over attorney fees. As stated in 24 Am. Jur., Fraud and Deceit, § 258, p. 91: "It is said that a fiduciary seeking to profit by a transaction with the one who confided in him has the burden of showing that he communicated to the other, not only the fact of his interest in the transaction, but all information he had which it was important for the other to know in order to enable him to judge of the value of his property." These instruments were given without consideration and it is clearly evident that

these parties never intended to thereby convey all their interest in the estate. They were given to Shearer to assist him in carrying on with the estate but not so limited because the heirs' had full confidence that he would make proper accounting of the assets thereof. We find the evidence fully supports the trial court's findings and we find these instruments should be set aside and vacated to the extent necessary to permit these heirs as beneficiaries to take whatever their interest in the estate may be.

Appellants contend there was a breach of duty by the attorney who acted for the executors. We are not here concerned with the relationship between Shearer and Thompson as individuals but only as their actions affect this estate and the court's proper administration thereof to the end that the assets thereof may be properly accounted for and distributed to those who are entitled thereto. Insofar as Thompson represented the administrator in this litigation or should do so in the future we think what was said in McCormick v. McCormick, *ante* p. 192, 33 N. W. 2d 543, is applicable. Therein we said: "It is against sound principles of professional ethics for one who knows that he is to be called as a witness in a case to accept the retainer as lawyer in that case. And where, after retainer, it is apparent to an attorney that his testimony will be material in behalf of his client, it is his duty to confer with his client and associate counsel at once and finally determine whether he will become a witness. If it is decided that he shall be a witness, he should immediately sever his connection with the litigation."

Appellants complain that the request of Shearer for conclusions of fact separately from conclusions of law made pursuant to the provisions of section 25-1127, R. S. 1943, was not complied with by the trial court. This request was made on June 4, 1947, and after the court had announced its decision. We think, under this situation, that the request came too late. See State ex rel.

Sorensen v. Mitchell Irrigation District, 129 Neb. 586, 262 N. W. 543. But even if not too late it could not be error in an equity case that would require a reversal and retrial. Such findings of fact and conclusions of law would be helpful to this court but the absence thereof, even when requested, could not be prejudicial because we consider the matter here de novo.

In view of what has been said in the opinion we affirm that part of the decree of the district court which holds the executors liable in their account for certain assets of the estate which it found had been converted by Shearer, one of the executors, to his own use but fix the date of the conversion, the rate of interest to be charged thereon, and the amount for which the executors are liable because thereof as in the opinion set forth and direct that the executors be charged in their final account with the sum of $13,783.93 with interest thereon at six percent from October 1, 1941. We further direct that Thompson be required to account for the funds he handled for the estate and that the executors be charged therewith in their account as in the opinion set forth. We also affirm that part of the decree of the trial court finding that the waivers, assignments, and conveyances executed by Helen S. Saxe and Marion A. Chapman were procured by misrepresentation and without consideration and because thereof should be vacated, canceled, and set aside but direct that they be vacated and set aside only to the extent necessary to permit these parties to take whatever interest they may have in the estate.

It is therefore ordered that the trial court be directed to modify its decree in accordance herewith and when so modified that it stand affirmed. Costs are taxed to appellant Shearer.

AFFIRMED AS MODIFIED.

PAINE, J., not participating.