H. J. COFFIN, APPELLEE, v. HARRY E. MAITLAND ET AL., APPELLEES, EVERETT SATTERFIELD INTERVENER, APPELLANT.

20 N. W. 2d 310

FILED OCTOBER 26, 1945. No. 31935.

*Guy Laverty*, for appellant.

*B. A. Rose* and *W. F. Manasil*, for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, CHAPPELL, and WENKE. JJ.

CHAPPELL, J.

This is a proceeding by intervener, transferee of the former owner and holder of the record title, to redeem from a decree of foreclosure of a tax sale certificate and quiet title to certain lands in Loup County, Nebraska. Intervener's right was based upon an alleged void service by publication upon the alleged defendant landowners, Olin J. Life, Elizabeth J. Life, his wife, and Martin L. Moore, now single, from whom he had obtained quitclaim deeds. The trial court found generally for plaintiff and against the intervener who appealed to this court. His brief assigns numerous alleged errors, many of which are directed to admissions of evidence. Since the case is an equity proceeding tried without a jury and heard *de novo* in this court we will not discuss such assignments. It is the rule that: "In a case tried to the court, the presumption obtains that the court, in arriving at a decision, will consider such evidence only as is competent and relevant, and this court will not reverse a case so tried because other evidence was admitted." *Nelson v. Nelson*, 133 Neb. 458, 275 N. W. 829.

For the purposes of this opinion we need only give con-

sideration to intervener's contentions that the decree is not sustained by the evidence and is contrary to law. In doing so we find that they cannot be sustained.

Decision of the case depends primarily upon whether Martin L. Moore, transferor, was the owner and holder of the record title to the land involved at the time of the fore-closure of the tax sale certificate; whether the notice for service by publication upon him complied with section 25-519, R. S. 1943; and whether at the time of such service he was in fact a nonresident of the state. If such propositions are answered in the affirmative the judgment must be affirmed, otherwise it must be reversed.

Intervener in his brief and argument relies upon the rule: "The right to redeem is a favorite of equity, and will not be allowed to be taken away, except upon a strict compliance with the steps necessary to divest it, and by due process of law." *Sedlak v. Duda,* 144 Neb. 567, 13 N. W. 2d 892, 154 A. L. R. 490. Nevertheless, there are other rules of law which preclude his right to redeem if the trial court had jurisdiction in the original tax foreclosure proceeding. In *Connely v. Hesselberth,* 132 Neb. 886, 273 N. W. 821, it was held: "Owners and others interested in realty, sold under decree foreclosing valid tax sale certificate, where foreclosure was commenced more than two years subsequent to issuance of tax sale certificate, are barred from the right of redemption on confirmation of such judicial sale" and "A decree foreclosing a tax sale certificate is not vulnerable to collateral attack for irregularities or defects in the foreclosure proceedings that do not go to the jurisdiction of the court."

Bearing these rules in mind we have examined the record. It discloses that plaintiff filed the original tax foreclosure proceedings in the district court for Loup County on February 10, 1932, more than two years after he purchased the tax sale certificate at a valid, administrative tax sale by the county treasurer. An amended petition was later filed but it in no manner changed the allegations with reference to Martin L. Moore and ——— Moore, his wife. Both the peti-

tion and the amended petition alleged in substance that Martin L. Moore and ———— Moore, his wife, were the owners and holders of the record title to the land at the time the action was filed.

In this connection by its decree in the proceeding at bar, the trial court found that Olin J. Life and Elizabeth J. Life, his wife, were not the owners of the land but strangers to the title at all times here involved and that Martin L. Moore was in fact the owner thereof. We are convinced that no other finding could have been made by the trial court under the record and the evidence appearing in the record which includes the abstract offered by intervener himself. For these reasons we do not deem it necessary to discuss at length the nature of the alleged interests of Olin J. Life and Elizabeth J. Life, his wife, or their alleged right of redemption which intervener claims as their successor by quitclaim deed. Suffice it to say, that if they ever had any right, title or interest in the property this record discloses that they were completely foreclosed by the original tax foreclosure proceedings, even though residents of the state at that time. The case, *County of Douglas v. Feenan, ante* p. 156, 18 N. W. 2d 740, recently decided by this court, is directly in point and conclusively decides that question. It follows that if they were strangers to the title or if they had any right, title or interest in the property which was validly foreclosed, as above suggested, then their quitclaim deed to the intervener granted him no right, title or interest upon which he could base a right to redeem.

In the original foreclosure proceeding Martin L. Moore and ———— Moore, his wife, were served by publication upon motion of plaintiff supported by an affidavit in conformity with section 25-518, R. S. 1943, based solely upon the ground that they were nonresidents of the State of Nebraska. The trial court so found and ordered constructive service upon them.

Notice was thereafter published in a legal newspaper for the required number of consecutive weeks. In conformity with section 25-519, R. S. 1943, the publication of notice

contained a summary statement of the object and prayer of plaintiff's petition, including a description of the property; specifically named the court wherein the petition had been filed; and notified the persons by name as the defendants thus intended to be served when they were required to answer plaintiff's petition or otherwise judgment would be entered against them.

Intervener complains that the title of the case at the top of the notice did not contain the names of each defendant. It was worded: "IN THE DISTRICT COURT OF LOUP COUNTY, NEBRASKA   H. J. Coffin Plaintiff -vs- H. E. Maitland, et al Defendants.   NOTICE." The title itself, it will be observed, did not contain the separate names of each other defendant but they, including Martin L. Moore and ———— Moore, his wife, were otherwise specifically named, directly addressed and notified in the body of the notice as the only defendants intended to be served in every particular as required by statute.

In this connection it is stated in 42 Am. Jur., sec. 95, p. 83: "The form of the notice to be published, and what it shall contain, rest in the legislative discretion, subject to the restriction that it shall be of such a character that it will have a tendency, in a reasonable degree, to convey information to interested parties that the action affects their rights." However, as stated in 50 C. J., sec. 196, p. 535: "Where the statute prescribes certain things which the published notice shall contain, they all must be considered essential, and the absence of any of them in the published notice is fatal to the jurisdiction; but the notice need contain nothing which is not required by statute."

The following statement appears in Bowers, Process and Service, sec. 276, p. 406: "The courts are strongly inclined to ignore mere technical and unsubstantial defects in published process, and to hold the notice sufficient if it be of such a character that it will, to a reasonable degree, inform the parties defendant that the action affects their rights, and give them an opportunity to assert and defend those rights." As early as *McCormick v. Paddock,* 20 Neb. 486,

30 N. W. 602, this court held: "When service of the pendency of the action is made by publication, if the published notice is so specific as to advise the defendants of their interest sought to be affected by the proceeding it is sufficient."

In *Armstrong v. Griffith*, 94 Neb. 515, 143 N. W. 461, it was said: "For a notice to be a good notice by which jurisdiction is acquired, it should address the defendant or defendants intended to be served. It may be that no particular form is necessary, but the defendant intended to be served should be directly addressed or the name should be included in the title of the case contained in the notice." We have examined the notice published in that case which is in the abstract of record on file in this court. It was addressed: "Notice to Non-Resident Defendant", not "Defendants" as stated in the opinion. There was but one defendant. We are of the opinion that the court overlooked the fact that the defendant named in the body of the notice was the only defendant in the case and therefore was clearly the defendant intended to be served. The first sentence above quoted is correct in every respect but we are of the opinion that the latter sentence is too restrictive and insofar as it conflicts with the correct rule hereinafter stated in this opinion, it is overruled. In that connection the correct rule applicable here is that if the names of the defendants intended to be served clearly appear either in the caption or in the body of the notice informing them when they are required to answer it is sufficient. It follows as a matter of course that the notice must also contain a summary statement of the object and prayer of the petition and mention the court wherein it is filed.

We conclude that while it would have been proper and commendable practice to have included the defendants' names in the title of the case at the top of the notice the statute does not specifically require it and we cannot say under the circumstances presented here that the notice was void and subject to collateral attack.

The abstract discloses that plaintiff filed *lis pendens* notice of the original foreclosure proceedings on October 13,

1932. The proceedings were pursued to decree, order of sale and sheriff's sale at which the plaintiff purchased the property. Thereafter, on May 9, 1935, the trial court confirmed the sale finding that the premises sold for their reasonable value, ordered a sheriff's deed delivered to plaintiff, granted him possession and awarded him a writ of restitution.

The intervener was county clerk and *ex officio* clerk of the district court for Loup County at all times during the pendency of the foreclosure proceedings and had full notice and knowledge thereof. On March 10, 1942, he filed a request to redeem and later on September 28, 1942, he filed another such request which included a prayer that the title to the premises involved be quieted in him. In the latter application he sets forth the chain of title in conformity with the abstract and alleges that Martin L. Moore on November 10, 1928, obtained a warranty deed to the property from one P. C. Erickson and his wife, and was the owner of the record title at all times thereafter until September 27, 1941, when Martin L. Moore, single, conveyed it to intervener who was from that time the owner and holder thereof. He also alleges that the service of publication upon Martin L. Moore and ——— Moore, his wife, and all subsequent proceedings were void for want of jurisdiction because at all times involved Martin L. Moore, single, was a resident of the state of Nebraska. He specifically prays therein that Martin L. Moore be found by the trial court to have been the owner of the land at the time decree of foreclosure was entered and to find that intervener was now the owner thereof and entitled as such to redeem.

At this point it should be stated the evidence discloses that intervener at the time of obtaining quitclaim deed from Martin L. Moore represented that he was an abstracter and needed a quitclaim deed to straighten out the title. Such a deed which recites a consideration of $5.00 was then executed by Martin L. Moore, single, for a consideration of $10.00. Intervener also received a quitclaim deed on August 30, 1941, from Olin J. Life and Elizabeth J. Life, his

wife, who were strangers to the title and gave them one dollar each not as consideration for the deed although so recited therein but "just a matter of good fellowship."

An attempt was made by intervener during the trial to show that Martin L. Moore was not in fact the owner of the property at the time the foreclosure was commenced but had theretofore transferred all of his interests to Olin J. Life. However, there is no competent evidence to sustain any such contention and it is contrary to evidence adduced by intervener and contrary to his own pleadings including a separate answer filed by Martin L. Moore himself. On the other hand, if it were true, as heretofore stated, the interests of Olin J. Life and Elizabeth J. Life, his wife, if they ever had any, were theretofore properly foreclosed in the original tax foreclosure proceeding.

It is now a rule in this jurisdiction that a judgment or decree affecting the title to land owned by a resident of this state the only notice given being by publication in conformity with section 25-519, R. S. 1943, but based solely upon the provisions of section 25-517, R. S. 1943, as to nonresidence as distinguished from subsection 6 thereof, is void and subject to collateral attack where no appearance was made by or for such resident. See *County of Douglas v. Feenan, supra*. It follows, of course, that if the owner were in fact a nonresident at the time such notice was given, then the judgment or decree would be valid and not subject to collateral attack as attempted in this proceeding.

Therefore the question of whether Martin L. Moore was a nonresident of Nebraska at the time the service by publication was had upon him in the original tax foreclosure proceedings became an important jurisdictional issue in this proceeding. The pleadings filed therein make the alleged residence or nonresidence of Martin L. Moore at that time an issue. A large part of the evidence adduced by the parties was devoted to that question which to recite would prolong this opinion beyond necessity.

The trial court found therefrom in its decree entered in these proceedings that Martin L. Moore was a nonresident

of the state of Nebraska at the time constructive service was had upon him in the original tax foreclosure proceedings which gave jurisdiction to the court. It was also found that the interests of Martin L. Moore in the premises had been lawfully foreclosed; that he had no right of redemption and that Olin J. Life was not the owner of the premises involved but a stranger to the title, therefore intervener had no right, title or interest which would permit him to redeem the premises. In its decree the trial court also found that the original decree of foreclosure, sale to plaintiff and confirmation thereof were valid and that the title to the premises should be quieted in him.

We conclude that there is ample competent evidence in the record sustaining the trial court's findings and decree. For the reasons heretofore stated the judgment is affirmed.

AFFIRMED.

WENKE, J., dissenting.

I disagree with that part of the opinion of the majority holding that jurisdiction was obtained of Martin L. Moore under the provisions of section 25-519, R. S. 1943, by reason of the notice published; and the overruling in part of the opinion of *Armstrong v. Griffith,* 94 Neb. 515, 143 N. W. 461.

It should be stated that section 25-519, R. S. 1943, is the identical statute under which *Armstrong v. Griffith, supra,* was decided.

In order to show the similarity between the two notices involved, the one in this case, which is held sufficient, and the one in the case of *Armstrong v. Griffith, supra,* which this court held insufficient, and that no difference in fact exists, we will set them out in full.

The notice here involved is as follows:

"IN THE DISTRICT COURT OF LOUP COUNTY, NEBRASKA

| | |
|---|---|
| H. J. Coffin    Plaintiff<br>        -vs-<br>H. E. Maitland, et al<br>            Defendants. | NOTICE |

To the above name defendants:

"You and each of you are hereby notified that the plaintiff on the 15th day of February, 1932 commenced an action against you in the District Court of Loup County, Nebraska and filed his petition therein, the object and prayer of which petition was to foreclose a certain tax sale certificate issued by the County Treasurer of Loup County, Nebraska against the defendants.

"And the said petition further prays for the foreclosure of a certain tax sale certificate issued by the County Treasurer of Loup County, Nebraska against the defendants Olin J. Life and Elizabeth J. Life, his wife, Martin L. Moore and ———— Moore his wife, first real and true name unknown, and a lien on the premises described as follows:

South half, the Northeast Quarter, the North half of Northwest Quarter and the Southeast Quarter of Northwest Quarter of Section 9, Range 20 West of the 6th P. M., Township 23, Loup County, Nebraska

"You and each of you are hereby required to answer said petition on the 21st day of November, 1932 or otherwise a judgement and decree will be entered against you.

H. J. Coffin

By B. A. Rose, His Attorney."

The notice involved in *Armstrong v. Griffith, supra,* is as follows:

"NOTICE TO NON-RESIDENT DEFENDANT.

"You and each of you will take notice that on the 9th day of July, 1900, the county of Keya Paha plaintiff herein, filed in the district court in and for the county of Keya Paha and state of Nebraska, against Muscatine Mortgage & Trust Company, non-resident defendants, the object and prayer of which are to foreclose the tax liens hereinafter described. In its first cause of action stated in said petition the plaintiff seeks to foreclose a tax lien upon the N½, NW¼, section 1, and the E½ NE¼, of section 2, in township 32, north of range 20 west of the Sixth principal meridian, located in the said county of Keya Paha and state of Nebraska; that the taxes involved in said first cause of action are the taxes

that were levied on said premises in the years 1896, 1897, 1898 and 1899, that there is now due the plaintiff upon its tax lien the sum of $46.50, for which sum with interest from this date on $37.50 thereof at ten per cent per annum. The plaintiff prays for a decree that defendants be required to pay the same or that said premises may be sold to satisfy the amount found due.

"You are required to answer said petition on or before the 27th day of August, 1900."

In the latter case it was held: "Where jurisdiction in a tax foreclosure case is sought to be acquired by publication, there should be a strict compliance with the provisions of the statute; and, if the notice published is insufficient, a sale under it will be considered void in an action to redeem brought by one who holds the legal title." It further states: "For a notice to be a good notice by which jurisdiction is acquired, it should address the defendant or defendants intended to be served. It may be that no particular form is necessary, but the defendant intended to be served should be directly addressed or the name should be included in the title of the case contained in the notice. * * * As the publication is not directed to the Muscatine Mortgage & Trust Company, the defendant to be served, and that company is not pointed out as the defendant intended, therefore the notice published cannot be a sufficient notice. These provisions of section 79 (now section 25-519, R. S. 1943) are mandatory, and, unless complied with, there is no jurisdiction."

An examination of the notice published in each of the cases disclose that they come within the rule above set forth. In the notice published in the case at bar the title of the case at the top of the notice did not contain the name of Martin L. Moore, the defendant intended to be served, neither was he directly addressed therein in any manner which could be said to point him out or notify him that he was the defendant intended to be served.

With the overruling in part of *Armstrong v. Griffith, supra*, I cannot agree. The language overruled is as follows:

"It may be that no particular form is necessary, but the defendant intended to be served should be directly addressed or the name should be included in the title of the case contained in the notice."

Approximately 32 years ago this court so construed the statute here involved. It has become a rule of property in this state and should not now be disturbed.

We stated in *McConnell v. McCook Nat. Bank*, 142 Neb. 451, 6 N. W. 2d 599: "The legislature passed an act which we have construed. Our construction has not been since questioned by the legislature. * * * That construction has become a rule of property in this state."

In the case of *Patterson v. Reiter*, 91 Neb. 56, 135 N. W. 222, the question of again considering the sufficiency of a notice in a tax foreclosure proceeding was presented to the court. From the opinion it appears that the court had previously passed on the same matter. In refusing to consider the matter, the court stated: "The judgment there announced has stood unchanged and unchallenged for more than three years, and, considering the nature of the question involved, it ought now to be considered as a rule of property in this state. We must therefore decline to again consider the question."

It is further stated in *Nortnass v. Pioneer Townsite Co.*, 82 Neb. 382, 117 N. W. 951: "When a former decision of this court has established a rule of property, which has been relied upon for many years as the foundation of real estate titles, the court will not overturn such rule, although it cannot assent to the reasoning upon which it is based." See, also, *Grandjean v. Beyl*, 78 Neb. 354, 114 N. W. 414.

There is still another reason why our former decision should not be disturbed. We recently stated in *Johnsen v. Benson Food Center*, 143 Neb. 421, 9 N. W. 2d 749, that: "We observe no ground or reason for a departure from the interpretation previously placed on this statute. We must assume that this interpretation expresses the intention of the legislature in its enactment since it has been convened in regular session four times since the publication of the

opinion in *Drum v. Omaha Steel Works, supra,* without legislative expression of a contrary intent."

I think that where our previous decision has become a rule of property and where many regular sessions of the legislature have been convened in the 32 years since publication of this court's opinion interpreting the statute without legislative expression of a contrary intent, that this court should assume that such interpretation expressed the legislative intent and not now engage in judicial legislation by giving it a different interpretation.

I am authorized to say that Simmons, C. J., concurs in this dissent.

CARTER, J., concurring:

The language of the dissenting opinion conveys an inference which in my opinion should be clarified. The dissenting opinion states: "The language overruled is as follows: 'It may be that no particular form is necessary, but the defendant intended to be served should be directly addressed or the name should be included in the title of the case contained in the notice.' " The majority opinion does not hold that a legal notice which complies with the foregoing quotation is not a valid notice, if other statutory requirements have been met. It does not overrule the quoted language, but holds merely that it is too restrictive for reasons that are clearly and correctly stated.

I am also of the opinion that no basis exists for adhering strictly to the announced rule in *Armstrong v. Griffith,* 94 Neb. 515, 143 N. W. 461, for the reason that it has become a rule of property. The correct rule with reference thereto is that where judicial decisions are presumed to have entered into business transactions and to have been acted upon as a rule of contracts and property, it is the duty of the courts, on the principle of *stare decisis,* to adhere to such decisions without regard to how it might be inclined to decide if the question were new. The rule is based on the thought that when parties have relied upon such decisions as settled law and rights have vested thereunder, their correctness or incorrectness in the abstract is of less

importance than that the rule of property so established should be constant and invariable. 15 C. J., sec. 342, p. 947.

But such is not the case here. The majority opinion does not have the effect of divesting or in any manner damaging any titles that may have vested under the rule announced in *Armstrong v. Griffith, supra.* Instead of restricting the rule announced in that case, it relaxes it. Instead of unsettling property rights vested under the case of *Armstrong v. Griffith, supra,* it confirms all such rights as well as others that may arise under the rule as it has been extended in the majority opinion. Such a situation, I submit, does not give rise to a proper application of the doctrine of a rule of property as it is understood in the law.

SIMMONS, C. J., dissenting:

The concurring opinion states: "It (the majority opinion) does not overrule the quoted language, but holds merely that it is too restrictive * * * ." The majority opinion is that the quoted language in *Armstrong v. Griffith,* 94 Neb. 515, 143 N. W. 461, "is too restrictive and in so far as it conflicts with the correct rule hereinafter stated in this opinion, it is overruled." The syllabus point, written by the majority, is that the case is "distinguished and overruled in part * * * ." The language used is not so important. The majority opinion does overrule that part of the Armstrong case which determines that a notice, to be sufficient, either be directly addressed to the party intended to be served or include his name in the title of the case contained therein. That is its intent.

While it may be that a notice meeting the requirement of the statute, as construed by this court in *Armstrong v. Griffith, supra,* would be good under the majority opinion, yet a notice could be held sufficient under the majority opinion which would be defective under the Armstrong case. Such is the situation here.

The concurring opinion states that the majority opinion does not have the effect of divesting or in any manner damaging any titles that may have vested under the rule announced in the Armstrong case. I agree, so far as it relates

to the tax purchaser's title. But, when applied to the title of the owner (tax debtor), it will have the effect of divesting or damaging titles that may not have been divested under that rule.

The situation in the instant case is similar to that which was presented to this court in *Ambler v. Patterson*, 80 Neb. 570, 575, 114 N. W. 781, 117 N. W. 990. There a notice ran to several different persons and described different tracts of land. This court held that such a "blanket notice," to redeem from a tax sale, was not sufficient. In the course of the opinion language was used which has a particular application to the case at bar. It was said: "A thorough examination of what is known as the 'Scavenger Act' (Comp. St. 1903, ch. 77, art. IX) convinces us that it was the intention of the legislature to allow the owner of land, against which a decree of sale for delinquent taxes has been entered, every opportunity to save his land, either by paying the amount of the decree prior to a sale, or by redeeming from the sale afterwards made. That the act should receive a liberal construction in favor of the owner to comply with this evident purpose of the legislature should not be denied; and it is our duty to afford the owner the opportunity to redeem his land where full and actual compliance with the statute has not been observed. * * * it would be unfair to the owner of the land, especially where the notice is given by publication, to require him to examine a list of numerous names to see if his own appears therein, or numerous descriptions of real estate to ascertain whether any of his own lands were among the descriptions."

The concurring opinion states that strict adherence to the rule announced in *Armstrong v. Griffith, supra,* need not be had for the reason that it has become a rule of property. It proceeds on the theory that the doctrine of a rule of property is not to be applied where a rule is rendered less restrictive or "has been extended." The rule of property doctrine has not been so limited in its application in this state.

In *Patterson v. Reiter*, 91 Neb. 56, 135 N. W. 222, we were

asked to review the decision in *Ambler v. Patterson, supra,* so as to hold a notice good that admittedly was insufficient, and so as to hold a title valid that admittedly was void under the Ambler decision. In short, it was urged that our previous construction was "too restrictive." We refused, holding that "The judgment there announced has stood unchanged and unchallenged for more than three years, and, considering the nature of the question involved, it ought now to be considered as a rule of property in this state."

Courts of other jurisdictions in tax matters have refused to extend and render constructions of statutes less "restrictive" because they had become rules of property. See *Carter v. Chevalier,* 100 Cal. App. 567, 280 Pac. 706; *Britt v. Harper,* 132 Ark. 193, 200 S. W. 787; *Henderson v. De Turk,* 164 Cal. 296, 128 Pac. 747; *Burr v. White Oak Lumber Co.,* 149 Tenn. 191, 258 S. W. 798.

The tax sale purchaser is entitled to the protection which the law gives him; likewise, the owner of the fee should not have his title divested in a tax proceeding without strict compliance with the law. We so held in the Ambler and Armstrong cases.

Rights which tax sale purchasers would have had under the present holding of the majority may have been held void or surrendered or not asserted under the rule in *Armstrong v. Griffith.* Rights which owners may have successfully asserted under that decision are now placed in question. Those latent questions, heretofore deemed settled by the Armstrong case, will now be activated by this decision. In *Grandjean v. Beyl,* 78 Neb. 349, 354, 110 N. W. 1108, 114 N. W. 414, this court said: "To overrule these cases would penalize many persons whose money was invested on the strength of these decisions and would introduce uncertainty into the law relating to real property. The courts have always been reluctant to change or overrule decisions which have established rules of property under which rights may have been acquired."

As I see it, the majority now violate that principle, and that without regard to whether they term their act one of

overruling or rendering less restrictive the construction of the statute.