In re Estate of Florence Hendricksen, deceased. William F. Rohn, Executor, appellee, v. Ethel V. Kelley, appellant.

56 N. W. 2d 711

Filed January 16, 1953. No. 33224.

464

*Ralph R. Bremers,* for appellant.

*John F. Rohn* and *Leary & Leary,* for appellee.

*Joseph T. Votava,* Amicus Curiae.

Heard before SIMMONS, C. J., CARTER, MESSMORE, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

The executor of the estate of Florence Hendricksen, deceased, filed an application in the probate proceedings in the county court of Douglas County for a declaratory judgment to have the proceeds of certain United States Saving Bonds, Series G, held by Ethel V. Kelley the daughter of the deceased and a residuary legatee under the will, to be declared assets of the estate. The county court entered an order finding generally in favor of the executor and against Ethel V. Kelley; that the proceeds of the bonds received by Ethel V. Kelley should be added to the residue of the estate; and that there be charged against the legacy of Ethel V. Kelley the sum of $5,918, with interest at 6 percent per annum from September 1, 1949, plus $4,000, with interest at 6 percent from December 31, 1949. From this judgment Ethel V. Kelley appealed to the district court for Douglas County.

The parties stipulated the case for trial on the equity docket. Trial was had. The trial court adjudged and decreed that the defendant Ethel V. Kelley held the sum of $9,794 with interest at 6 percent on $5,918 from September 10, 1949, and with interest at 6 percent on $3,876 from December 31, 1949, as a trustee under a resulting trust for the plaintiff William F. Rohn, executor of the estate of Florence Hendricksen, deceased, and that the plaintiff have and recover said amount from defendant; that said amount was properly a part of the assets of the estate of Florence Hendricksen; that the defendant pay said amount to the plaintiff within 20 days from the date of the decree; that in the event the defendant failed to pay as aforesaid, the plaintiff, in the estate of Florence Hendricksen, deceased, should set off from the 3/10 share of the residue of the estate which should be due to defendant upon closing, after adding to the other assets of the estate the sum of $9,794 with interest on the amounts heretofore set out and in the same manner, being the full amount found due to plaintiff; that in the event the defendant's 3/10 share of the residue of the estate due to the defendant at the time of closing and computed as set forth above was less than the amount found due plaintiff from defendant, the plaintiff was authorized to enter a partial satisfaction of the judgment awarded therein and to institute such proceedings as might be necessary to recover the balance due; and that plaintiff recover his costs therein expended from the defendant.

The defendant Ethel V. Kelley filed a motion for new trial which was overruled. Defendant appeals to this court.

For convenience we will refer to the parties as they are designated in the district court, and will make reference to the defendant on occasions as Ethel V. Kelley.

The pleadings in the district court are substantially the same as those filed by the respective parties in the county court. We summarize the pleadings and elim-

inate from the petition of the plaintiff in the district court certain facts which will more fully appear in the opinion.

That the plaintiff is the duly appointed, qualified, and acting executor of the estate of Florence Hendricksen, deceased, and that she left a last will and testament, is admitted. Further, the petition alleges the issuance of certain United States Savings Bonds, Series G, of the face value of $10,000, now in the possession of Ethel V. Kelley, one of the beneficiaries under the will, and the execution of certain written instruments by Florence Hendricksen and Ethel V. Kelley; and that by virtue of such instruments the United States Savings Bonds should be declared to be assets of the estate of Florence Hendricksen, deceased, for which the beneficiary Ethel V. Kelley should be required to account. The respective shares of the beneficiaries under the will are also set forth. The petition further alleges that the court should render a declaratory judgment as provided for by law, and more specifically as provided for in section 25-21,152, R. R. S. 1943; that the $10,000 savings bonds, Series G, or so much thereof as may be necessary, should be retained and charged against the share of Ethel V. Kelley as provided for by the will; and if her share is less than said amount, that the executor be instructed to sue for any balance due from her to the estate. The petition prayed that Ethel V. Kelley show cause why the $10,000 United States Savings Bonds, Series G, are not a part of the estate; that should the court determine the bonds are a part of the estate, then the court should enter a declaratory judgment to the effect that it is the executor's duty to see that the bonds as before mentioned or the proceeds from the same now held by Ethel V. Kelley are treated as assets of the estate of Florence Hendricksen; that the executor equalize the shares in said estate between and among the beneficiaries named in the residuary clause of the will under the doctrine of retainer insofar as possible; and that if the net estate

is not sufficiently large for the doctrine of retainer to so equalize said shares, that the executor then be directed to file suit against Ethel V. Kelley for any deficiency.

The answer of the defendant Ethel V. Kelley is a general denial, except the admission contained therein as set out above.

William F. Rohn testified that he was an attorney engaged in the practice of law with his father at Fremont. He was acquainted with Florence Hendricksen and knew that she possessed certain United States Savings Bonds. On March 30, 1948, Florence Hendricksen went to his office and on that date executed her last will and testament. By the terms of the will she bequeathed to a granddaughter the sum of $2,000. The rest, residue, and the remainder of the estate she divided among her children as follows: 4/10 to her son Glenn F. Peterson, 3/10 to her son Carl B. Peterson, and 3/10 to her daughter Ethel V. Kelley. She had possession of the United States Savings Bonds and left them with this witness the day she executed the will or a day or two subsequent thereto.

On the same day the will was executed Mrs. Hendricksen executed the following instrument written in longhand by this witness and signed by Mrs. Hendricksen: "Wm. Rohn: Today I signed my will in your office. I have $10,000 Series G United States Savings Bonds Nos. M6-266-759 G to and including M6-266-768 G. These were purchased with my money only and are to be entirely a part of my estate. My daughter Mrs. Ethel Kelley was in the Stephens Bank with me when they were issued and she requested the bank to issue them in this manner and I permitted it only to prevent an argument and to save embarrassment. Ethel Kelley is to have only the interest in these bonds that is given her in my will of this same date. (signed) Florence Hendricksen."

These bonds were 10 in number, and issued for $1,000

each. This witness retained possession of the bonds from March 30, 1948, to May 9, 1948. Five or six weeks after Mrs. Hendricksen executed the will this witness talked over the telephone to either Mr. or Mrs. Kelley, he did not remember which, about the bonds, and he did so at Mrs. Hendricksen's insistence. In the conversation he requested Ethel V. Kelley to come to Fremont. On or about May 9, 1948, this witness had another conversation with Ethel V. Kelley at her mother's home in Fremont where he and the Kelleys had been invited for dinner. In the presence of Mrs. Hendricksen and Ethel V. Kelley he mentioned to Ethel V. Kelley that her mother had requested him either to obtain an assignment of the bonds from her, or to redraft the will, and if it was necessary to redraft the will Mrs. Hendricksen would cancel the bonds because it would cost her some of the principal amount of the bonds to have them cashed and reissued in her name alone. He explained to Ethel V. Kelley that unless she wished to execute such an assignment the bonds would be immediately surrendered and the will would be redrawn. He read aloud the assignment and advised Ethel V. Kelley to sign it. Mrs. Kelley took the assignment. He assumed she read it, and she did sign it.

This assignment is as follows: "May 9, 1948 The undersigned Ethel Kelley for value received herewith sells, assigns and transfers to her mother, Florence Hendricksen, any interst she may have or purport to have in $10,000.00 Series G United States Savings Bonds, numbers M6-266-759 G to and including M6-266-768 G. Said Ethel Kelley further states that she had no interest in these bonds at the time her name was placed thereon and agrees that she shall have only such interest in the bonds as may be given her under the will of Florence Hendricksen. (signed) Ethel Kelley." William Rohn signed as witness.

On June 3, 1949, this witness received a letter from Ethel V. Kelley as follows: "6-3rd-1949 Please send all

of The Papers to Omaha (signed) Mrs Harry Kelley." After receiving this letter he prepared a letter for Mrs. Hendricksen to sign, wherein she directed Rohn to mail to her at 301 South 33rd Street in Omaha, certain papers, which included the 10 $1,000 Series G bonds. The letter was dated June 9, 1949, was signed by Mrs. Florence Hendricksen, and was witnessed by Mrs. Harry Kelley (Ethel V. Kelley).

On June 11, 1949, William F. Rohn wrote to Mrs. Hendricksen enumerating items constituting her property, which included the 10 $1,000 Series G bonds, and in which it is stated: "You will specifically remember that the $10,000 in bonds are made out to you and Mrs. Kelley jointly but that we have copies of papers showing you to be the sole owner." He testified that after that time he had no information as to the possession of the bonds, and that Mrs. Florence Hendricksen died on July 25, 1949. He further testified that he had a conversation with Mrs. Kelley the day of her mother's funeral and made arrangements for her to come to his office with regard to probating her mother's will. Within a day or two he had a meeting with Mrs. Kelley, her two brothers, and a Mr. Johnston, an undertaker who came with them. They asked him for the will, which he did not give to them. The other people were asked to leave and did so. He then asked Mrs. Kelley if she wanted to talk to him and his father alone, to which she agreed. In the presence of his father he told Mrs. Kelley he wanted to straighten out one thing. He did not want to embarrass her in front of her brothers who were from out of town. He asked her if she realized the 10 $1,000 bonds were part of the estate, and told her they would prefer to have this matter straightened out so she need not be embarrassed if her intention was to hold the bonds. Mrs. Kelley stated that she realized the bonds were part of the estate, and said she intended to turn them over. However, she turned neither the bonds nor the proceeds thereof over to the executor of the estate.

He further testified that the total estate, including the bonds amounted to $32,000 or $33,000; that Mrs. Kelley's share would be approximately $9,000, and the expenses would have to be deducted; and that the 10 $1,000 bonds were included in the inventory of the estate as assets of the estate.

Ethel V. Kelley testified that she was with her mother at the time the bonds were purchased. They were made out to Mrs. Florence Hendricksen or Mrs. Ethel Kelley. In other words, they were co-owners of the bonds which had a maturity value of $10,000. Her mother had spent the winters with her for the last three or four years when they lived in Omaha, and spent the springs and summers in Fremont. Her mother was desirous of buying a house in Grand Island where she formerly lived, and did purchase a home there and took possession of it in May 1949. She stayed about 10 days and then wrote to the Kelleys to come after her, which they did. She remained with them from the time of her return until her death.

It also appears from the evidence that a Mr. Johnston, a next-door neighbor of the Kelleys and a friend of theirs, was called by Mrs. Hendricksen to come to her apartment. When he arrived at the apartment Mrs. Hendricksen had a big brown envelope which contained bonds and stocks. She asked him to take the envelope and put it in his safe, which he agreed to do. In three or four days from that time she called and asked Mr. Johnston to return the envelope, which he did.

Ethel V. Kelley further testified that she procured possession of the bonds on June 12, 1949. She cashed six of the bonds between June 20 and June 23, 1949, in Omaha, and obtained a credit slip September 10, 1949, for $5,918. After her mother's death she cashed the remaining four bonds, presenting them to the Omaha National Bank, and on December 31, 1949, her account was credited with $3,876.

Johnston testified that after he returned the envelope

to Mrs. Hendricksen she opened it in the dining room and took the bonds and stocks from it. There were 10 government bonds. She handed them to Mrs. Kelley and said: "Ethel I want you to have these bonds." She put the rest back in the envelope, handed it to him, and asked him to take care of it and put it in the safe, which he did. While there is some discussion that this evidence is offered to prove a gift of the bonds by Florence Hendricksen to Ethel V. Kelley, it is clear from the record the issue as to whether or not there was a gift of the bonds to Ethel V. Kelley is not before this court.

Harry Kelley, the defendant's husband, testified that Mrs. Hendricksen had stayed in the Kelley home in Omaha in the winters from 1945 to 1949, and would go to Fremont in the spring. He further testified about the purchase of the home in Grand Island by Mrs. Hendricksen and that she wrote for the Kelleys to come after her, which they did. He further testified with reference to the savings bonds being given by Mrs. Hendricksen to Johnston for safekeeping, and the transactions with reference to getting the bonds back from Rohn and the letters ·with respect thereto; that when the bonds were returned by Johnston, Mrs. Hendricksen took them from the envelope and handed them to his wife who took them and put them in a box in the cabinet drawer; that he was with his wife when she signed the assignment; that there was no conference between Rohn and his wife or Mrs. Hendricksen regarding the assignment; that it was presented to his wife right after the dinner things were cleaned up and Mrs. Hendricksen was in the kitchen; that Rohn just gave the assignment to Mrs. Kelley and asked her to sign it; and that she glanced at it and did sign it.

Ethel V. Kelley testified with reference to the assignment as follows: "* * * my mother was in the kitchen, and he put this in front of me, and he said, 'Will you sign this?' I just walked over and just sort of glanced over it, and said, 'Yes,' like that, and signed my name."

She received no money from her mother, nor any other thing for signing the paper, and nothing was said to lead her to believe that she should sign the paper. It was a complete surprise to her, and was never mentioned to her by her mother. She did not know anything about her mother signing any paper that had to do with her not having any interest in the bonds except the interest in the share left to her by her mother's will. She further testified that it was a complete surprise that Rohn testified as he did concerning the statement signed by her mother with reference to the 10 $1,000 Series G, United States Savings Bonds, to the effect that she would only have an interest as provided for by the will, and that the bonds would be a part of her mother's estate.

The defendant in several assignments of error contends the trial court erred in admitting into evidence certain testimony and exhibits, and denying admissibility of certain testimony into evidence.

This case is before this court on a trial de novo as provided for in section 25-1925, R. R. S. 1943, and with respect to the admissibility of evidence, the following becomes pertinent: In a case tried to the court in equity the presumption obtains that the trial court, in arriving at decision, considered such evidence only as was competent and relevant, and this court will not reverse a case so tried because other evidence was admitted, if there is sufficient competent and relevant evidence in the record to sustain the judgment. See, Pierce v. Fontenelle, *ante* p. 235, 55 N. W. 2d 658; Western Smelting & Refining Co. v. First Nat. Bank, 150 Neb. 477, 35 N. W. 2d 116; Coffin v. Maitland, 146 Neb. 477, 20 N. W. 2d 310; Kemmerling v. State, 89 Neb. 98, 130 N. W. 988; Smith v. Garbe, 86 Neb. 91, 124 N. W. 921, 136 Am. S. R. 674; Smith Bros. v. Woodward, 94 Neb. 298, 143 N. W. 196.

This brings us to the proposition as to whether or not the executor may, under the Declaratory Judgments Act, file a petition in the probate proceedings, such as

was done in this case, to require the defendant to show cause why the government savings bonds heretofore described or the proceeds thereof in her possession should not be declared assets of the estate of Florence Hendricksen, deceased. In this connection we deem the following pertinent to a determination of this proposition.

Section 25-21,149, R. S. Supp., 1951, provides: "Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree."

County courts are courts of record. See Art. V, § 16, Constitution of the State of Nebraska.

The county court is by the Constitution and the statutes of the state given exclusive original jurisdiction of all matters relating to the settlement of estates of deceased persons. See, Starr v. Fidelity & Deposit Co., 134 Neb. 240, 278 N. W. 478; In re Estate of Donlen, 145 Neb. 370, 16 N. W. 2d 731; In re.Estate of Wiley, 150 Neb. 898, 36 N. W. 2d 483.

A proceeding in the probate court to settle the estate of a decedent is a proceeding in rem, and every one interested in such settlement is a party in the probate court whether he is named or not, and this is particularly true as to the distribution of an estate under a will. See, In re Estate of Sweeney, 94 Neb. 834, 144 N. W. 902; Nilson v. Tekamah Investment Co., 133 Neb. 180, 274 N. W. 465; In re Estate of Statz, 144 Neb. 154, 12 N. W. 2d 829.

County courts, in carrying out their exclusive original jurisdiction in matters relating to the administration of the estates of deceased persons, have jurisdiction to determine title to personal property claimed by representatives of decedents' estates. See In re Estate of

Wiley, *supra*. See, also, Egan v. Bunner, 155 Neb. 611, 52 N. W. 2d 820.

It will be observed by the foregoing that the county court is a court of record, has exclusive original jurisdiction over the probate and administration of estates, and has jurisdiction over personal property of estates to determine the title claimed by the representatives of decedents' estates.

Section 25-21,152, R. R. S. 1943, provides: "Any person interested as or through an executor, * * * in the * * * estate of a decedent * * * may have a declaration of rights or legal relation in respect thereto: * * * (c) To determine any question arising in the administration of the estate * * * including questions of construction of wills and other writings."

The defendant contends the Declaratory Judgments Act ordinarily contemplates distinct proceedings by petition and not by the filing of an application for a declaratory judgment in a pending action. From an examination of the Declaratory Judgments Act we find nothing that prevents the filing of a petition for a declaratory judgment in probate proceedings. Sections 25-21,149, R. S. Supp., 1951, and 25-21,152, R. R. S. 1943, vest the county court with the power and authority to declare the rights, status, and other legal relations of the parties. We are satisfied that the facts appearing in this case bring it clearly within both the letter and spirit of our Declaratory Judgments Act.

The defendant relies on the case of Graham v. Beauchamp, 154 Neb. 889, 50 N. W. 2d 104, wherein the following language is found: "In an action for declaratory judgment the matter of entering a declaratory judgment has been held to be one of practice and procedure rather than one of jurisdiction. An action for such a judgment or relief is a special proceeding and is equitable in its nature, but it is not an exercise of general equity jurisdiction in which the court may grant consequential relief under a general prayer or upon general equitable

considerations." 1 C. J. S., Actions, § 18, p. 1046, and Washington-Detroit Theatre Co. v. Moore, 249 Mich. 673, 299 N. W. 618, 68 A. L. R. 105, are cited.

Defendant argues that by the decree granted by the trial court consequential relief was actually given to the plaintiff based upon the exercise of general equity jurisdiction in impressing a resulting trust upon the proceeds held by the defendant.

In the instant case the executor prayed for specific relief, and set forth in his petition in the county court and in the district court all the facts concerning the issuance of the bonds, the instruments upon which is based the action for declaratory judgment, and prayed as previously set out. In this connection the following authorities become applicable.

County courts are without general equity jurisdiction but, in exercising exclusive original jurisdiction over estates, may apply equitable principles to matters within probate jurisdiction, and render to the parties interested in the assets of the estate such relief as their respective situations may justify. In re Estate of Statz, *supra.*

As stated in In re Estate of Jurgensmeier, 142 Neb. 188, 5 N. W. 2d 233: "* * * it is to be remembered that county courts are without general equity jurisdiction, but, in exercising exclusive original jurisdiction over estates, may apply equitable principles to matters within probate jurisdiction." See, also, In re Estate of Frerichs, 120 Neb. 462, 233 N. W. 456; In re Estate of Wilson, 97 Neb. 780, 151 N. W. 316; In re Estate of Wiley, *supra.*

We believe the foregoing pertinent to the application of the equitable principles to matters within probate jurisdiction.

The defendant predicates error on the part of the trial court in holding that the laws and regulations of the federal government and the regulations of the Treasury Department have no applicability to the facts in this case respecting the ownership of the bonds and the proceeds thereof.

The defendant contends that Ethel V. Kelley, having possession of the United States Savings Bonds here involved and as co-owner of the same, had the right to cash said bonds at any time, and upon the death of her mother became the sole owner of the bonds as if they were registered in her name, and was entitled to the proceeds thereof.

There appear in the record certain United States Treasury Department regulations governing United States Savings Bonds of the class involved in this case. The defendant cites subsection (a) of section 22 of the Second Liberty Loan Act as amended, which constitutes a new section to the Second Liberty Loan Act, 31 U. S. C. A., § 757 c (a); and in addition Article I, section 8, clause 2, of the Constitution of the United States; Article I, section 8, clause 18, of the Constitution of the United States; and Article VI, clause 2, of the Constitution of the United States. In the light of the foregoing citations, there is no doubt but that there is a valid exercise by Congress of its constitutional power to borrow money on the credit of the United States; that the borrowing power necessarily includes the power to fix the terms of the obligation of the United States; that the regulations of the Treasury Department under which the bonds are issued have the force and effect of federal law; and that the law of the United States is the supreme law of the land and takes precedence over state law.

The primary purpose of the Treasury Department regulations is to prevent the government from being involved in suits between claimants to government bonds. These Treasury Department regulations refer to the bonds themselves, providing protection to the government if its agents pay the named owner or co-owner. In addition, the government's power to borrow money at a fixed rate of interest should not be burdened by defending litigation.

From an examination of the cases cited by the defendant we are unable to find any case in which a con-

veyance by one co-owner of savings bonds to another was involved. For the most part the cases cited by the defendant refer to a situation where no positive act of the parties themselves, those who are co-owners of the bonds, intervenes between the time the bonds are issued and the time the dispute arises. · The government would have no interest as to how the assets of Florence Hendricksen's estate would be distributed, or that by the last will of Florence Hendricksen Ethel V. Kelley had no further rights in the estate so long as she retained the proceeds of the bonds. It seems clear that the federal laws and regulations are not intended to interfere with the positive act of two co-owners of bonds by which one conveys her interest in them to the other. In the instant case, as shown by the evidence, Ethel V. Kelley assigned all her right, title, and interest in the bonds to her mother during her mother's lifetime, and for a valuable consideration. The evidence also shows that she acknowledged that the proceeds of the bonds constituted part of the assets of her mother's estate, and her assignment of the bonds clearly indicates such to be true.

The government's interest is a contractual one. Its obligation was to pay either of the co-owners the amount agreed upon as shown by the bonds upon their proper presentation, in compliance with the federal law. When the Treasurer of the United States satisfied the government's obligation by paying the proceeds of the bonds to Ethel V. Kelley, the government's interest in the matter ended. The government is in no sense a party to this · litigation, and under the 'facts and circumstances could in no event have any interest in the result of this litigation.

The court decreed that Ethel V. Kelley deliver the proceeds which she obtained from cashing the bonds to the executor in accordance with her assignment of the bonds for a consideration to her mother, whereby she agreed to take her share of the estate as provided for by

her mother's will. There is nothing in this phase of the decree contrary to the laws of the United States or the regulations of the United States Treasury Department. Those laws and regulations do not prevent the declaration of a resulting trust in the proceeds of the bonds as shown under the facts in this case.

The 1951 Revised Rules of this court, rule 8 a 2 (4), provides in part: "Assignments of error relied upon for reversal and intended to be urged in the brief shall be separately numbered and paragraphed, bearing in mind that consideration of the cause will be limited to errors assigned and discussed."

The defendant has assigned errors in her brief which are not discussed, and therefore are not considered. See Kuhlman v. Farmers Union Co-Operative Assn., 152 Neb. 597, 42 N. W. 2d 182.

We conclude, under the pleadings, the evidence, and the authorities cited herein, the judgment of the trial court is correct.

For the reasons given in this opinion, the judgment of the trial court is affirmed.

AFFIRMED.