WILL OF BARNES: GALSTER, Executrix, Appellant, vs. FIRST NATIONAL BANK OF KENOSHA, Respondent.

*April 7—May 6, 1958.*

For the appellant there was a brief by *William J. H. Evans* and *Lucareli & Lucareli,* all of Racine, and oral argument by *Mr. V. J. Lucareli* and *Mr. Evans.*

For the respondent there was a brief by *Cavanagh, Mittelstaed, Sheldon, Heide & Hartley* of Kenosha, and oral argument by *William A. Sheldon.*

BROWN, J.  Controversies arising out of the settlement of the estate of George Barnes, deceased, have been considered by this court in *Guardianship of Barnes* (1955), 271 Wis. 6, 72 N. W. (2d) 384, and *Guardianship of Barnes* (1957), 275 Wis. 356, 82 N. W. (2d) 211.  The present situation is this:

Barnes' former guardian, respondent bank, turned over to Mrs. Galster, executrix of the will of Barnes, the property which it held as guardian at the time of Barnes' death, less expenses of guardianship, as directed in *Guardianship of Barnes, supra.*

Some of this property was in the form of United States savings bonds purchased and issued in the names of *George*

*Barnes or Nettie Posthumus;* also similar bonds purchased and issued in the names of *George Barnes or Susie Berglund.*

Like bonds were originally purchased and issued in the names of *George Barnes or Augusta Albert.* These bonds were cashed by Barnes' guardian without necessity and without court order and the proceeds deposited in the guardianship account. Barnes had other income but before any was received by the guardian the guardian spent $1.50 of the bonds' proceeds for copies of letters of guardianship. The subsequent receipts from his individual assets were sufficient for Barnes' support and other expenses. The cash in the guardianship account was delivered by the bank to the executrix together with the Barnes-Posthumus and Barnes-Albert bonds.

The bank now has become agent for Miss Albert and Mrs. Posthumus and is executor of Mrs. Berglund who survived Barnes but who is now dead. In such capacities the bank asked for and obtained from the county court in which Barnes' estate is administered an order commanding the executrix to deliver to the bank, acting in behalf of the joint tenants who survived Barnes, the two sets of existing bonds and the proceeds of the bonds which were liquidated.

The principal dispute centers on the proceeds of the Barnes-Albert bonds. The executrix, who is also Barnes' sole heir, resists the bank's demand by contending (1) that the joint tenancy was destroyed in Barnes' lifetime when his guardian liquidated the bonds which were jointly owned whereby the proceeds are an asset of the estate, not subject to rights of survivorship; (2) that the proceeds of the bonds cannot be followed and substituted for the bonds themselves; (3) that the executrix must keep proceeds of bonds and existing bonds until Barnes' estate is settled, at which time the county court will adjudicate the termination of joint tenancy, determine the inheritance tax, and decree the distribution of the property in the hands of the executrix.

All these bonds are subject to the United States treasury regulations under which they are issued and sold. These regulations have the force of federal law. *In re Estate of Hendricksen* (1953), 156 Neb. 463, 56 N. W. (2d) 711. After the bonds are paid the United States has no interest in the proceeds and state law controls the rights to those. Id., treasury department circular No. 530, secs. 315.38 and 315.45, 31 CFR (6th rev.), pp. 419, 421, expresses the regulations pertinent to these bonds. The treasury reserves the right, while both co-owners are living, to pay a bond to either upon his request or the request of his guardian without requiring the signature of the other co-owner. If either co-owner dies without the bond having been presented ". . . the surviving co-owner will be recognized as the sole and absolute owner . . . as though the bond were registered in his name alone, . . ." regulations, sec. 315.45 (c). Survivorship rights are thus recognized. Without court authorization the Barnes-Albert bonds were presented by the guardian, were paid to it, and it held the proceeds until, when Barnes had died, it was compelled by the court to deliver them to appellant, executrix of Barnes' will. She holds them subject to the rights of others, if any, just as the guardian did.

In *Boehmer v. Boehmer* (1953), 264 Wis. 15, 58 N. W. (2d) 411, there was a statute, sec. 221.45, which authorized a bank to pay a joint-tenancy deposit to either depositor, just as the treasury regulation does in the case of bonds. We held there that the unauthorized and illegal act of a guardian in liquidating a bank account which his ward held in joint tenancy did not break the joint tenancy or terminate the right of survivorship in the proceeds. The reason was that the election, whether to terminate the tenancy or to maintain it, was personal to the co-owner while sane and did not pass to his guardian when he became incompetent. (We do not question the right of the court of jurisdiction to authorize

liquidating bonds or bank deposits owned in joint tenancy if the ward's needs require it.) The same reasoning applies to other forms of property held in joint tenancy and specifically to the bonds now in question. We are sustained in this belief by *In re Church Estate* (1956), 141 Fed. Supp. 703, where it was so held. In that case a mother and her son were owners of United States bonds issued to *Minnie B. Church or Merton B. Church.* The son became incompetent. His committee (corresponding to guardian) cashed the bonds without court order and without necessity. Part of the proceeds were invested in other bonds in Merton's name alone. The mother became incompetent and died, leaving the son surviving.

The court held that the personal rights of the co-owners did not devolve upon their guardians. Therefore the unauthorized cashing of the bonds by his guardian did not terminate Merton's rights of survivorship and on his mother's death Merton "became the sole owner of the bonds, or of whatever funds could be traced to the bonds as their source, which existed at the time of his mother's death." (141 Fed. Supp. 705.)

So now we conclude that the survivorship rights of Miss Albert were unaffected by the guardian's illegal act and those rights continue in the proceeds of the bonds. Except for $1.50 which the guardian spent before it had received other Barnes revenue, the proceeds of the bonds can be followed into the hands of appellant, Barnes' executrix, and are subject to Miss Albert's right of survivorship just as the bonds themselves would become hers as the surviving co-owner. We treat the $1.50 as *de minimis*.

Even if appellant must ultimately surrender the bonds and the proceeds of bonds to the surviving joint tenants she submits that she should not be compelled to do so now. In support of this contention appellant cites sec. 312.01 and sec. 230.48 (2), Stats., as follows:

"312.01 INVENTORY AND APPRAISAL; OATH OF APPRAIS-ERS. Every personal representative shall, within three months after his appointment, make and return to the court a true inventory of all the property of his decedent which shall come to his possession or knowledge, including for tax purposes life insurance, joint and life tenancies. . . ."

"230.48 TERMINATION OF JOINT TENANCY IN PERSON-ALTY. (2) An administrator or executor shall include in his inventory the interest which the decedent owned as such joint tenant in any real-estate mortgage note, bank account, stock, bond, chose in action, or other personal property before his death. The county court shall adjudicate in the final judgment or order for assignment regarding the termination of such joint tenancy and regarding such other facts as are essential to a full determination of the rights of the parties interested."

Appellant says that these statutes require her to keep possession of the property until after the final judgment in the Barnes estate has been entered and the inheritance tax has been determined and paid.

Title to property owned in joint tenancy passes to the survivor immediately upon the death of the co-owner.

". . . unless the joint tenancy has been destroyed during the lifetime of the joint tenants by an effective severance of the interest of one from the interest of the other joint tenant, so as to destroy the unity of title, they continue as joint tenants until, upon, and by reason of the death of one, the survivor becomes the sole and absolute owner of the property, and there consequently exists no longer any interest or property right whatsoever in the deceased joint tenant or his estate." *Musa v. Segelke & Kohlhaus Co.* (1937), 224 Wis. 432, 436, 272 N. W. 657.

The certificate of termination of joint tenancy referred to in sec. 230.48 (2), Stats., perfects the record of transfer of title from joint to sole ownership but the title itself has already been transferred by the death. An analogous situation is presented when the intestate owner of an interest in

realty dies. Subject to his debts, his interest passes at once to his heirs. *Estate of Rieman* (1956), 272 Wis. 378, 75 N. W. (2d) 564. Though the final judgment contains an assignment distributing the realty it is not the assignment or the judgment which transfers the title. The distributees do not take under the judgment but derive their title by descent. *Roick v. Roick* (1939), 232 Wis. 546, 550, 288 N. W. 189.

After the property has been inventoried and appraised and the executor has reserved a sufficient amount from it to take care of any taxes concerned with it, we are unable to see what right the executrix has or what benefit the estate obtains in keeping possession of property which belongs to surviving joint tenants and which forms no part of the estate. The county court does not have to hold property in its hand in order to determine the inheritance tax or to recite the disposition of the property in the final judgment. The statutes which appellant relies on do not command the executor to take possession of property held in joint tenancy, nor can we find good reason to compel surviving joint tenants to wait until the termination of possibly protracted probate of estates for the enjoyment of their property.

Respondent did not bring proceedings for a certificate of termination of joint tenancy, which sec. 230.48 (1), Stats., permits. Appellant did commence the probate of the estate and in due course inheritance taxes will be determined and a termination of joint tenancy will be included in the final judgment. Under the circumstances we consider that those matters should be processed in the probate already begun but, tax liability being cared for, the probate need not deprive the survivors of the present possession and enjoyment of their property.

The order from which this appeal is taken authorized the appellant to withhold from delivery $1,000 of the proceeds of the Barnes-Albert bonds and a $500 bond from each of the Barnes-Posthumus and Barnes-Berglund bonds to in-

demnify herself against liability for inheritance taxes on these accounts. We must presume the court allowed a sufficient amount, particularly as the appellant does not say it is too little.

We conclude the order should be affirmed.

*By the Court.*—Order affirmed.

HALLOWS, J., took no part.